**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE- ) <br> MANUFACTURED LAMINATE FLOORING  ) <br> DURABILITY MARKETING AND SALES      ) <br> PRACTICES LITIGATION                         ) <br> _____ ) | MDL No. 1:16-md-2743 (AJT/TRJ) |

**DEFENDANT LUMBER LIQUIDATORS, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**THE REPRESENTATIVE CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL & PROCEDURAL HISTORY ............................................................................ 1

I.      Overview ............................................................................................................... 1

II.     The *Abad* Litigation ........................................................................................... 3

III.    Plaintiffs' Limited and Exclusive Warranty ................................................... 4

LEGAL STANDARD........................................................................................................... 5

ARGUMENT....................................................................................................................... 6

I.      Multiple causes of action fail at the outset for purely procedural reasons ...................... 6

        A.    The applicable statutes of limitations bar the ADTPA and Alabama
              fraudulent-concealment claims ................................................................ 6

        B.    Numerous claims are subject to dismissal because the Representative
              Complaint fails to plead sufficient pre-suit notice................................ 8

        C.    By asserting common-law fraud, the Representative Complaint waives the
              ADTPA claim........................................................................................... 11

II.     Plaintiffs do not plausibly plead their consumer-protection claims .............................12

        A.    The consumer-protection causes of action each require reliance on or
              personal deception by a misrepresentation .......................................... 12

        B.    Plaintiffs do not sufficiently allege reliance or deception with respect to any
              statement on Lumber Liquidators' website.......................................... 14

        C.    Plaintiffs do not sufficiently allege reliance or deception with respect to any
              statement concerning AC rating........................................................... 16

        D.    The Representative Complaint does not sufficiently allege any actionable
              affirmative misrepresentation .............................................................. 16

        E.    Plaintiffs do not assert any actionable omission................................. 18

III.    The Representative Complaint does not state a fraudulent-concealment claim .............23

IV.     Plaintiffs do not adequately plead the implied-warranty or Magnuson-Moss
        claims .................................................................................................................25

        A.    Plaintiffs' implied-warranty claims fail because they do not plausibly allege
              that their flooring was unfit for its ordinary purpose .......................... 26

        B.    The Magnuson-Moss claim fails because Plaintiffs do not adequately allege
              a breach of any written or implied warranty ....................................... 27

CONCLUSION .................................................................................................................30

CERTIFICATE OF SERVICE...............................................................................................31

## INTRODUCTION

As stated in the Representative Class Action Complaint (the "Representative Complaint"), Defendant Lumber Liquidators, Inc. ("Lumber Liquidators"), has been the target of several actions relating to the formaldehyde content of Chinese-made laminate flooring that it previously sold to consumers. And as Lumber Liquidators has explained to this Court, those actions are media generated, lawyer driven, and legally unsupportable. The matter at bar, which concerns the durability of the same Chinese-made laminate flooring, merits the same description.

The Representative Complaint goes so far as to contend that Plaintiffs "cannot reasonably be charged with notice of the defect prior to the discovery of widespread supplier problems relating to Lumber Liquidators' Chinese-sourced [l]aminates as a result of the formaldehyde controversy." Compl. ¶ 82. But Plaintiffs simultaneously allege that their flooring demonstrated serious shortcomings within weeks or even days of installation. *See id.* ¶¶ 94, 96, 98, 100, 102. These inconsistent assertions lay plain the parasitic nature of the Representative Complaint.

Indeed, despite lacing their pleading with allusions to the formaldehyde litigation and references to a related securities case, Plaintiffs concede—as they must—that "formaldehyde non-compliance" is *not the basis of any claims made in this action*." Compl. ¶¶ 51, 52 (emphasis added). The Court should not countenance such blatant attempts to bootstrap novel theories of liability into well-worn patterns of fact for no apparent purpose other than to allow another group of class-action lawyers to grab for a piece of the proverbial pie. For the reasons that follow, the Court should dismiss the Representative Complaint in full and with prejudice.

## FACTUAL & PROCEDURAL HISTORY

### I.  Overview

This multidistrict litigation comprises dozens of lawsuits alleging that Lumber Liquidators improperly marketed Chinese-made laminate flooring under its "Dream Home" label

as durable.  On October 4, 2016, the U.S. Judicial Panel on Multidistrict Litigation transferred these lawsuits to this Court.  On February 27, 2017, Plaintiffs filed the Representative Complaint, ECF No. 41, comprising the following ten claims from five states chosen by Plaintiffs' and Lumber Liquidators' counsel as representative of all claims in this matter:

| Claim | Cause of Action | Claimants |
|-------|-----------------|-----------|
| First | Breach of implied warranties | All Plaintiffs, all classes |
| Second | Fraudulent concealment | All Plaintiffs, all classes |
| Third | Violation of the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. § 2301 *et seq.* | All Plaintiffs, all classes |
| Fourth | Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* | Moylen, California class |
| Fifth | Violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* | Moylen, California class |
| Sixth | Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* | Moylen, California class |
| Seventh | Violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1 *et seq.* | Florez, Alabama class |
| Eighth | Violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 41.600; *id.* § 598.0915 *et seq.* | Ryan, Nevada class |
| Ninth | Violation of the New York General Business Law ("GBL") § 349 | Hotaling, New York class |
| Tenth | Violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-198 *et seq.* | Perel, Virginia class |

Plaintiffs say that their flooring scratches too easily and fails to live up to the industry standard for durability.  A voluntary and, to consumers, obscure system for assessing laminate durability, the European Producers of Laminate Flooring ("EPLF") Abrasion Rating System, lies at the heart of these lawsuits.  Despite largely failing to allege that, before their purchases, they saw or heard—let alone understood—any representation that products were "AC3" rated (that is, that they belonged to the EPLF's third "Abrasion Criteria" classification), Plaintiffs attempt to allege that they relied on and were misled by such representations.  And they attempt to allege that any statement that flooring is "durable" or the like necessarily guarantees that it is AC3

rated.  These contentions defy common sense and are insufficient to state any legal claim.

## II.   The *Abad* Litigation

Many of this matter's underlying lawsuits were part of a putative nationwide class action

in the U.S. District Court for the Central District of California, *Abad v. Lumber Liquidators, Inc.*,

No. 2:15-cv-03795-GW-JPR (C.D. Cal.).  In *Abad*, the court issued a tentative ruling on the

Second Amended Complaint (SAC), ECF No. 104 (Feb. 8, 2016), reasoning, as relevant here:

- That "with the exception of the warranty claims, the claims in the SAC 'sound in fraud,' meaning that Plaintiffs are required to comply with Federal Rule of Civil Procedure 9(b) with respect to such claims," *id.* at 4;

- That the Second Amended Complaint "falls short of Rule 9(b)'s requirements with respect to many, if not all, of the individual plaintiffs"; that "[a]t a minimum, many of them have not identified *when* they saw any of the statements some of them recite"; and that "[t]hey also do not identify *why* at least certain of the statements quoted were misleading or false," *id.* at 5;

- That "the statements 'very durable'" and "'premium'" "are non-actionable puffery," *id.*; and

- That "Plaintiffs' allegations regarding provision of notice are insufficient" for purposes of the Magnuson-Moss claim, *id.* at 7.

In response, the *Abad* plaintiffs amended their complaint yet again.

Even still, the court tentatively ruled various aspects of the Third Amended Complaint

defective.  *See* ECF No. 124 (June 2, 2016).  As relevant here, these include:

- That "Plaintiffs do not appear to respond to" Lumber Liquidators' argument"—and thus "concede[]"—that "Plaintiffs' consumer protection statute claims cannot be based on statements that the flooring came with warranties because it *did* come with warranties," *id.* at 2;

- That Plaintiffs "concede[d] that there was no pre-suit written notice for claims under the consumer protection statute[] of Alabama," *id.* at 3; and

- That "[w]ith respect to the implied warranty claims, Plaintiffs admit that pre-suit notice is required for Alabama, California, [and] Virginia," such that "it would appear that the implied warranty claims of plaintiffs from those . . . states should be barred," *id.* at 4.

The *Abad* complaints were signed by the same attorneys who signed the Representative

Complaint (with the addition, here, of a Virginia attorney). The Representative Complaint is, consequently, their *fifth* bite at the apple. But, for the reasons that follow, Plaintiffs' pleading practices continue to fall well short of the mark. Because allowing what would amount to a *sixth* amendment would be futile under these circumstances, the Court must dismiss all claims with prejudice. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

## III.   Plaintiffs' Limited and Exclusive Warranty

As established during the *Abad* litigation, Plaintiffs agreed to a limited and exclusive warranty when they purchased their flooring.[1] Of particular relevance here:

- In the "WHAT'S COVERED" section, the warranty states that the flooring "is warranted against finish wear from normal household conditions resulting in the exposure of the paper layer" of the laminate but that such warranty does not include "5% of the total square footage of your purchase" as a standard "waste factor." Ex. 1 at 12, 24, 44.

- In the "WHAT'S NOT COVERED" section, the warranty disclaims coverage of, inter alia, "[d]amages caused by moisture," which "can cause issues such as cupping, crowning, warping, buckling, peeling, seam swelling, twisting, delaminating, or gapping"; "indentations and scratches (caused by pets, furniture, appliances, tools, heels, toys, etc.)"; "[f]ading or loss of gloss"; "[d]efects in flooring that do not exceed the waste factor"; as well as "[l]osses, damages or expenses relating to anything other than the floor itself" and "costs relating to the removal of defective flooring or installation of replacement flooring." *Id.* at 16-17, 24-25, 44-45.

- In the "WHAT WE WILL DO" section, the warranty provides that Lumber Liquidators "will provide a store credit for the purchase price paid for the defective portion of the flooring (excluding any installation costs and labor) in excess of the applicable waste factor." *Id.* at 17, 25, 46. The warranty reiterates that "[a] store credit is the sole remedy" and then states that "UNDER NO CIRCUMSTANCES WILL WE BE LIABLE FOR ANY DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES" and that "UNDER NO CIRCUMSTANCES WILL OUR LIABILITY ARISING OUT OF OR RELATING TO THE PURCHASE OF YOUR . . . FLOORING EXCEED THE TOTAL

---

[1] In *Abad*, Brian Pullin, the Vice President of Customer Care Operations for Lumber Liquidators, submitted a declaration attaching the limited warranties applicable to Plaintiffs' purchases as part of a request for judicial notice. ECF No. 33 through 33-11 (Oct. 5, 2015). To provide the full context, Lumber Liquidators attaches the entire set of related documents here as Exhibit 1. Based on the alleged products and timeframes of Plaintiffs' purchases, the following warranty documents, as denoted by their Exhibit letters in the *Abad* case, govern Plaintiffs' claims: B—Hotaling (New York), Ex. 1 at 16-18; D—Florez (Alabama), Ryan (Nevada), and Perel (Virginia), *id.* at 24-26; and I—Moylen (California), *id.* at 44-46.

SUM PAID BY YOU FOR THE FLOORING AT ISSUE." *Id.* at 17-18, 25-26, 46.

Undeterred by these disclaimers, Plaintiffs assert that their flooring is defective—and that Lumber Liquidators committed fraud—because of precisely the potential problems that the warranty discloses and excludes, and they seek recovery far beyond store credit. This they cannot do. What is more, Plaintiffs fail to attach or even acknowledge the text of this warranty, notwithstanding its filing in *Abad*. The Court should not tolerate such blatant obfuscation.

## LEGAL STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "'two-pronged approach'" governs. *Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*, No. 1:10CV651 (JCC), 2010 WL 4645791, at *2 (E.D. Va. Nov. 8, 2010) (quoting *Iqbal*, 556 U.S. at 679). "First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 680-81). Second, "a court must conduct a 'context-specific' analysis," drawing on "'judicial experience and common sense'" to decide whether the well-pleaded factual allegations "'plausibly suggest an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679, 681).

Under Federal Rule of Civil Procedure 9(b), a party "must state with particularity the circumstances constituting" allegations of fraud. "To satisfy the heightened pleading standard of Rule 9(b), a Plaintiff must plead with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Casey v. Bank of Am., N.A.*, Civ. A. No. 2:16CV482, 2017 WL 64142, at *2 (E.D. Va. Jan. 4, 2017) (quoting *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009)).

"[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading,

. . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading." 5A Wright & Miller, Federal Practice and Procedure § 1327 (3d ed.). A court may consider the document "if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (brackets and internal quotation marks omitted). The Court may thus consider the limited warranty. *See, e.g.*, Compl. ¶¶ 61, 62, 64, 69, 94-101, 103.

## ARGUMENT

### I.   Multiple causes of action fail at the outset for purely procedural reasons.

The Representative Complaint fails properly to plead elements of each and every cause of action. But the Court can dismiss numerous claims at the outset for purely procedural reasons.

### A.   The applicable statutes of limitations bar the ADTPA and Alabama fraudulent-concealment claims.

Plaintiff Florez's fraudulent-concealment and ADTPA claims came too late.[2] Under Alabama law, the statute of limitations for fraud is two years after "discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3. "Discovery" means when the fraud was actually or should have been discovered through reasonable diligence. *Rumford v. Valley Pest Control, Inc.*, 629 So. 2d 623, 628 (Ala. 1993). The ADTPA carries an even shorter window for suit: "one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action." Ala. Code § 8-19-14.

These deadlines are fatal to Florez's claims. She purchased her flooring around February 15, 2014, and concedes that she noticed what she says are defects "soon after installation."

---

[2] Cases transferred and consolidated under the multidistrict-litigation statute "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015); *see* 15 Wright & Miller, Federal Practice & Procedure § 3862 (4th ed.). As a result, for purposes of determining timeliness, the court should look to the original filing date of each case. *See also* Fed. R. Civ. Proc. 15(c)(1)(B) (providing for relation back of amended complaints).

Compl. ¶ 94. But she waited until August 29, 2016—*two and a half years later*—to file suit. *See* Compl., ECF No. 1, No. 1:16-cv-5020 (E.D. Va.).

Florez suggests that she can avoid dismissal because Lumber Liquidators "fraudulently concealed" durability defects through "a pattern and practice of deflecting" such issues by attributing them to other causes. Compl. ¶ 81. This practice, the Representative Complaint argues, prevented discovery of defects "prior to the discovery of widespread supplier problems relating to Lumber Liquidators' Chinese-sourced [l]aminates as a result of the formaldehyde controversy in March 2015." *Id.* ¶ 82. But that argument is beside the point with respect to the ADTPA, for Florez's filing came more than one year after March 2015.

In any event, because Florez's claims fall outside the limitations periods on their faces, she holds the burden to allege facts supporting fraudulent concealment. *See Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1561 (11th Cir. 1983); *Miller v. Mobile Cty. Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981). To do so, she must allege:

> "(1) that the defendant had a duty to disclose a material fact; (2) that the defendant either failed to disclose or concealed that material fact; (3) that the defendant's failure to disclose or its concealment of that material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered damage as a result of its action, or inaction, induced by the defendant's failure to disclose or its concealment of the material fact."

*Scharff v. Wyeth*, No. 2:10-cv-220-WKW [WO], 2011 WL 3320501, at *11 (M.D. Ala. Aug. 2, 2011) (quoting *Soniat v. Johnson-Rast & Hays*, 626 So.2d 1256, 1258-59 (Ala. 1993)) (alterations omitted). And "[b]ecause fraudulent concealment invokes fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply." *Wegner v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 2089658, at *3 (D.S.C. May 5, 2015) (citing *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 573-74 (4th Cir. 1976)).

Florez does not carry that burden here. In this context, there is no duty to disclose absent

a "confidential relationship" between the parties. *Holdbrooks v. Cent. Bank of Ala., N.A.*, 435 So. 2d 1250, 1252 (Ala. 1983); *see also Brown v. First Fed. Bank*, 95 So. 3d 803, 812 (Ala. Civ. App. 2012). Florez does not attempt to allege any such relationship. Nor does she plausibly allege that Lumber Liquidators concealed any material fact from her: again, she insists that "soon after installation, [she] noticed buckling and peeling of the surface of the flooring." Compl. ¶ 94. Nor, finally, does she allege that Lumber Liquidators induced her to refrain from filing suit. In sum, Florez's timeliness allegations are entirely conclusory and, therefore, insufficient. The Alabama fraudulent-concealment and ADTPA claims thus warrant dismissal.

## B. Numerous claims are subject to dismissal because the Representative Complaint fails to plead sufficient pre-suit notice.

As for the implied-warranty claims, the Uniform Commercial Code provides that, once a buyer has accepted goods, he "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." UCC § 2-607(3)(a). "[A]ny remedy" includes "the right to damages." 1 White & Summers, Uniform Commercial Code § 12:19 (6th ed.). Each state at issue here has adopted this rule. Ala. Code § 7-2-607(3)(a); Cal. Com. Code § 2607(3)(a); Nev. Rev. Stat. Ann. § 104.2607(3)(a); N.Y. U.C.C. Law § 2-607(3)(a); Va. Code Ann. § 8.2-607(3)(a). And in each, *pre-suit* notice is required. *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 931-32 (9th Cir. 2011) ("The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court. This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." (internal citation omitted)).[3]

---

[3] *See also Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *7 (N.D. Ill. Nov. 28, 2016) (applying New York law); *Fowler v. Goodman Mfg. Co.*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *5 (N.D. Ala. Dec. 12, 2014); *Kerr v. Hunter Div.*, 32 Va. Cir. 497, 508 (1981); *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) (applying the statutes of Alabama, New York, and

Plaintiffs allege that "Defendant received notice that the [l]aminates were not merchantable through its own product testing, its 'robust Quality Assurance program,' and numerous customer complaints, well before Plaintiffs . . . filed suit." Compl. ¶ 123. As explained below, they come nowhere close to pleading sufficient facts to support that statement. And, in any event, the UCC's buyer-specific pre-suit notice requirement governs even if the seller has preexisting knowledge of the alleged defect. *See, e.g.*, *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 266-67 (4th Cir. 1998) (applying Virginia law); *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972-73 (5th Cir. 1976) (applying California law). Thus, a manufacture's "general awareness" of problems with the product does not substitute for proper notice. *Smith v. Apple, Inc.*, Civ. A. No. 08-cv-1498, 2009 WL 3958096, at *2 (N.D. Ala. Nov. 4, 2009). Nor do media reports or similar legal claims from other consumers. *See In re iPhone 4S Consumer Litig.*, No. 12-cv-1127 CW, 2013 WL 3829653, at *14 (N.D. Cal. July 23, 2013); *Singleton v. Fifth Generation, Inc.*, No. 515CV474 (BKS/TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016). Nothing in the Representative Complaint excuses Plaintiffs' failure to comply with the pre-suit notice requirement. As a result, Plaintiffs are barred from any remedy, such that the Court must dismiss all of the implied-warranty claims with prejudice.

Plaintiffs' Magnuson-Moss claim likewise fails for lack of notice and an opportunity to cure. As an initial matter, "courts have applied the same U.C.C. pre-suit notice requirements to reject breach of warranty claims brought under [Magnuson-Moss]." *In re Rust-Oleum*, 155 F. Supp. 3d at 799 (collecting cases). In any event, the statute provides that "[n]o action . . . may be brought unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). The

---

Virginia).

Representative Complaint states that Lumber Liquidators "has been notified of its breach of written warranties" and "has had adequate and reasonable opportunity to cure its breaches of or fulfill its warranty obligations, but has failed to do so." Compl. ¶ 162. But that allegation is totally conclusory and therefore insufficient. Plaintiffs do not even allege *when* they ostensibly provided notice, making it impossible for the Court to determine whether any opportunity to cure was reasonable. The Court should dismiss all of Plaintiffs' warranty claims on notice grounds.

Plaintiff Florez's ADTPA claim also fails because she neglected to provide the required pre-suit notice. "At least 15 days prior to the filing of any action" under the ADTPA, a plaintiff must provide the defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Ala. Code § 8-19-10(e). The plaintiff carries the burden of proving compliance. *See Sheehan v. Bowden*, 572 So. 2d 1211, 1213 (Ala. 1990). Failure to submit a proper written demand warrants dismissal. *See Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399-1400 (N.D. Ala. 1997); *Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988).

The Representative Complaint never alleges that Florez provided Lumber Liquidators a written demand. To be sure, the Representative Complaint contends that Lumber Liquidators was generally aware of potential defects with the laminate flooring based on various website complaints and vague allegations of testing. *See* Compl. ¶¶ 123, 127, 137, 142. But testing and third-party comments are insufficient to satisfy Florez's specific duty. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05-cv-2623, 2009 WL 937256, at *10 (N.D. Ill. Apr. 6, 2009) (dismissing ADTPA claim because the plaintiff "cites no authority for the proposition that [a court] can ignore the statute's explicit [notice] requirement").

Plaintiff Moylen likewise failed to provide proper pre-suit notice under the CLRA. The

CLRA says that "thirty days or more" prior to filing a damages action, a plaintiff "shall" notify the defendant "in writing" "of the particular alleged violations" and demand that the defendant "correct, repair, replace or otherwise rectify the goods or services alleged to be in violation." Cal. Civ. Code § 1782(a). The purpose of this rule "is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Superior Court*, 124 Cal. Rptr. 852, 859 (Cal. Ct. App. 1975). "This clear purpose may only be accomplished by a literal application of the notice provisions." *Id*. Failure to comply requires dismissal with prejudice. *See, e.g.*, *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1088-89 (C.D. Cal. 2009); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007).

The Representative Complaint states that Moylen "notified Defendant in writing by overnight mail on July 25, 2016 of the particular violations of" the CLRA. Compl. ¶ 182. But he filed suit *one week later*, on August 1, 2016—three weeks before the requisite 30-day period had run. Compl., ECF No. 1, *Coburn et al. v. Lumber Liquidators, Inc.*, No. 1:16-cv-05018 (E.D. Va.). "[F]ailure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends." *Cattie*, 504 F. Supp. 2d at 950. Again, website posts and sketchy allegations of product testing do not excuse the failure to fulfill this obligation, as neither could have provided Lumber Liquidators an opportunity to "correct, repair, replace or otherwise rectify" Moylen's flooring, Cal. Civ. Code § 1782(a), or served the purpose of "facilitate[ing] precomplaint settlement[]," *Outboard*, 124 Cal. Rptr. at 859. The Court must dismiss all claims where Plaintiffs failed to provide the requisite pre-suit notice.

### C.    By asserting common-law fraud, the Representative Complaint waives the ADTPA claim.

The ADTPA provides that "[a]n election to pursue the civil remedies prescribed in this

chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter." Ala. Code § 8-19-15.  Accordingly, "the plain text of the ADTPA specifically and unambiguously makes, as an essential element of the claim, the statutory remedy exclusive of" the other enumerated remedies. *Holmes v. Behr Process Corp.*, Civ. A. No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *3 (N.D. Ala. Nov. 17, 2015).  Plaintiff Florez asserts both an ADTPA claim and a claim for fraudulent concealment under Alabama common law.  The former cannot survive. *See id.* (dismissing ADTPA claim in light of common-law fraud claims).

## II.   Plaintiffs do not plausibly plead their consumer-protection claims.

Turning to Plaintiffs' failure to plead the elements of their claims, the consumer-protection causes of action are largely conclusory and fall far short of Rule 9(b)'s requirements.

### A.   The consumer-protection causes of action each require reliance on or personal deception by a misrepresentation.

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  This "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (Cal. Ct. App. 1996).  The UCL provides that, for private persons, only those who have "suffered injury in fact and . . . lost money or property as a result of [the challenged conduct]" have standing to sue. Cal. Bus. & Prof. Code § 17204.  As this Court has observed, "the UCL imposes an 'actual reliance' requirement on private citizens prosecuting a claim under the 'unfair' and 'fraud' prongs . . . and also under the 'unlawful' prong to the extent that the substance of the unlawful conduct is a misrepresentation claim." *In re Lumber Liquidators Chinese-Manufactured*

*Flooring Prods. Mktg., Sales Practices & Prods. Liability Litig.*, No. 1:15-md-02627-AJT-TRJ, ECF No. 722 (E.D. Va. Dec. 11, 2015) (citing *Hale v. Sharp Healthcare*, [108 Cal. Rptr. 3d 669, 678-79 (Cal. Ct. App. 2010)]; *Mazza v. Am. Honda Motors Co.*, 666 F.3d 581, 591 (9th Cir. 2012)). Reliance requires that "the representation . . . played a substantial part, and so [was] a substantial factor, in influencing [the plaintiff's] decision." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) (internal quotation marks omitted).

The same goes for the other California consumer-protection statutes. The FAL prohibits certain "untrue or misleading" statements. Cal. Bus. & Prof. Code § 17500. The CLRA proscribes certain "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). Only consumers who have suffered injury "as a result of" such conduct may sue. Cal. Bus. & Prof. Code § 17535 (FAL); Cal. Civ. Code § 1780(a) (CLRA). That requires reliance. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 887-88 (Cal. 2011).

As for Virginia, the VCPA "requires proof, in misrepresentation cases, of the element[] of reliance." *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014). The ADTPA and NDTPA require the same. *See* Ala. Code § 8-19-10(e); *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10-CV-00510-GMN-NJK, 2013 WL 3270430, at *13 (D. Nev. June 26, 2013). And New York GBL § 349 requires personal deception. *See Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (N.Y. App. Div. 2004). Like reliance, deception requires awareness of a misrepresentation when the plaintiff makes the decision. *See id.*

Finally, all of these statutes allow suit only where the challenged action *caused* the plaintiff's damages. Ala. Code § 8-19-10(a); Cal. Bus. & Prof. Code § 17204; *id.* § 17535; Cal. Civ. Code § 1780(a); N.Y. Gen. Bus. Law § 349(h); Va. Code Ann. § 59.1-204(A); *Copper Sands*, 2013 WL 3270430, at *13. Without reliance or deception, a pleading does not state

13

causation.  *See, e.g.*, *Copper Sands*, 2013 WL 3270430, at *13; *Solomon*, 777 N.Y.S.2d at 55.

**B.      Plaintiffs do not sufficiently allege reliance or deception with respect to any statement on Lumber Liquidators' website.**

Again, in making a purchasing decision, a person cannot rely on or be deceived by something that he has not yet perceived.  *See, e.g.*, *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011); *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011).  Plaintiffs make the centerpiece of their case allegations concerning representations on Lumber Liquidators' website.  But, despite much weasel wording, the Representative Complaint does not adequately allege that Plaintiffs saw, relied on, or were deceived by any specific statement there before purchasing their flooring.

Take Plaintiff Florez (Alabama).  The Representative Complaint alleges that she purchased a variety of flooring in mid-February 2014.  Compl. ¶ 94.  It proceeds to describe what the Lumber Liquidators website says about that variety *now*, *id.*—three years after the purchase and almost two years after, according to Plaintiffs themselves, "Lumber Liquidators discontinued all sales of Chinese-sourced laminates" on May 7, 2015, *id.* ¶ 49.  But the Representative Complaint never states that Florez even saw the website.  Instead, after describing its contents, the Representative Complaint recounts an exchange with a salesman on the day of the purchase and then vaguely asserts that Florez "relied upon the above-referenced representations."  *Id.* ¶ 94.

The story of Plaintiff Moylen (California) is similar.  At least he allegedly "researched Defendant's [l]aminates on Defendant's website prior to his purchase."  *Id.* ¶ 96.  But that stops noticeably short of alleging that he actually saw any specific statement on the website.  Once again, the Representative Complaint includes information only about what the website says about the product that Moylen purchased as of the filing date in late February 2017.  *Id.*  And, once again, the Representative Complaint offers only the amorphous allegation that he "relied

upon the above-referenced representations"—immediately below a description of a conversation that he allegedly had with a salesman on the day of his (presumably first) purchase. *Id.*

The Representative Complaint says that Plaintiff Ryan (Nevada) purchased a product in November 2013 and then describes what Lumber Liquidators' website currently says about that product. *Id.* ¶ 98. The Representative Complaint proceeds to state that "Ms. Ryan researched this product on Defendant's website and read that this product was a 'premium' product and would last for at least 30 years." *Id.* Critically, it does not state that Ryan did so before she purchased the product. And, once more, it describes an interaction with a Lumber Liquidators' salesman before hazily stating that Ryan "relied upon the above-referenced representations." *Id.*

As for Plaintiff Perel (Virginia), the Representative Complaint does not even attempt to allege that he relied on Lumber Liquidators' website. *See id.* ¶ 102. Indeed, Plaintiff Hotaling (New York) is the only one for whom the Representative Complaint specifies reliance on the website. *Id.* ¶ 100. But the standard in New York is deception, not reliance, and the Representative Complaint fails to allege that any particular representation deceived Hotaling.

In addition to the trumped-up website allegations, the Representative Complaint points to things that Lumber Liquidators salespeople supposedly said or did. But two of the five named Plaintiffs allege misrepresentations only via Lumber Liquidators' website, not on the part of any salesperson. For example, with respect to Plaintiff Ryan, although the Representative Complaint states that "[o]n the day of her purchase, Ms. Ryan told the Lumber Liquidators' salesman she had a dog and was concerned about the floor's ability to withstand scratches," *id.* ¶ 98, the pleading is devoid of any response. And for Plaintiff Hotaling, the Representative Complaint alleges no personal interaction whatsoever, as she purchased her flooring online. *See id.* ¶ 100. Accordingly, the Court can dismiss the Nevada and New York consumer-protection claims

without even considering the content of the alleged misrepresentations.  In short, Plaintiffs cannot premise their claims on any statement from Lumber Liquidators' website.

### C.   Plaintiffs do not sufficiently allege reliance or deception with respect to any statement concerning AC rating.

Even if a purchaser perceives a representation, she cannot rely on or be deceived by it if she does not understand it.  Assuming that Plaintiffs saw or heard something about an AC3 rating prior to their purchases, they offer nary an allegation that they appreciated what that meant.  "AC3" is not intuitive, and Plaintiffs do not contend that the product webpages allegedly listing that description or any salesperson explained what it meant.  The Representative Complaint thus cannot plausibly allege reliance on anything related to an AC3 rating.

Plaintiffs do point to an entry on Lumber Liquidators' blog, which is separate from the product webpages where Plaintiffs allege that the AC3 descriptions were displayed.  That entry states that "'[t]he common term used to denote the durability of laminate flooring is the Abrasion Criteria or "AC" rating'" and that "'[a]n AC3 for residential use is perfectly adequate.'"  Compl. ¶ 29 (quoting http://www.lumberliquidators.com/blog/whats-an-ac-rating).  But that cannot save Plaintiffs' claims, for they fail to allege that they actually viewed this blog before the purchases.[4]

### D.   The Representative Complaint does not sufficiently allege any actionable affirmative misrepresentation.

Even beyond Lumber Liquidators' website, the Representative Complaint does not point

---

[4] In any event, the blog does not say that flooring falling below an AC3 rating does not meet minimum standards for durability within the industry, as Plaintiffs suggest.  Instead, it displays a chart showing that AC1-rated flooring is "[s]uitable" for "[r]esidential use" in "bedrooms or guest rooms" with "[m]oderate [t]raffic" and that AC2-rated flooring is "[s]uitable" for "[r]esidential use" in "living rooms or dining rooms" with "[g]eneral [t]raffic." http://www.lumberliquidators.com/blog/whats-an-ac-rating (last accessed Mar. 20, 2017).  Nor do allegations that flooring companies and sellers generally offer only AC3- or higher-rated products, *see* Compl. ¶¶ 32-37, indicate that it would be illegal to sell products with a lower AC rating in the United States, as Plaintiffs necessarily contend, *see id.* ¶ 37.

to an actionable affirmative misrepresentation underlying any Plaintiffs' claim.

Puffery cannot support claims under the statutes at issue here because it cannot constitute a misrepresentation or because a consumer cannot reasonably rely on such statements. *See, e.g.*, *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013).[5] Accordingly, "vague statements about general functionality . . . are not actionable." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1011 (N.D. Cal. 2014). Instead, "only misdescriptions of specific or absolute characteristics of a product" may give rise to a claim. *In re Sony*, 758 F. Supp. 2d at 1089 (internal quotation marks omitted); *see also Cooper*, 334 B.R. at 192 (stating that "'however strong and positive the language may be,'" the "'mere expression of an opinion'"—including "'commendatory statements'" and "'trade talk'"—is insufficient (quoting *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001) (alterations omitted)).

Puffery is exactly what Plaintiffs allege. To state that a product is "premium," "durable" (or "very durable," etc.), "scratch resistant" (not "scratch *proof*"), will hold up well to pets, or the like easily meets the puffing standard. For that reason, *Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015), held that statements claiming that Lumber Liquidators' flooring was "exceptionally durable," "the best product available," "long lasting," "free of defects," and "harder than hardwood" were not actionable. *Id.* at *1. And, as described above, the *Abad* court expressly rejected representations regarding durability and the premium nature of Lumber Liquidators' products as puffery in what amounts to a

---

[5] *See also Baroi v. Platinum Condo. Dev., LLC*, No. 2:09-CV-00671-PMP-GWF, 2012 WL 2847919, at *2 (D. Nev. July 11, 2012); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010); *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 191-92 (E.D. Va. 2005); *see also Holmes v. Behr Process Corp.*, Civ. A. No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2-3 (N.D. Ala. Nov. 17, 2015) (treating ADTPA claim as a species of fraud, to which puffery rule applies).

previous stage of this litigation.   Plaintiffs have decided to try their hand at reasserting such allegations before this Court, but they remain puffery for all of the same reasons as before.[6]

Finally, Plaintiffs fail to plead any misrepresentation based on AC rating. The Representative Complaint baldly asserts that their flooring was "not AC3 compliant, as extensive testing by Plaintiffs has now revealed." Compl. ¶ 53. But it proceeds to allege testing results for only one Plaintiff, Ryan. *Id.* ¶ 98. The others cannot plausibly contend that Lumber Liquidators misrepresented AC rating based on pure ipse dixit. And, as discussed above, Ryan fails to allege that she viewed any statement as to an AC3 rating (or anything else) on Lumber Liquidators' website before her purchase and likewise fails to allege that a salesperson said anything concerning an AC3 rating (or anything else) to her in the store. She cannot, therefore, plausibly claim that Lumber Liquidators misrepresented the AC rating of her flooring.

### E.   Plaintiffs do not assert any actionable omission.

Plaintiffs also premise their consumer-protection claims on allegations of various omissions, including that "the Laminates are defective," "do not have an AC rating of AC3," are not 'very durable,'" and "will prematurely fail long before the end of the 30-year warranty period." Compl. ¶ 170; *see also, e.g.*, *id.* ¶¶ 188, 195, 197, 6 (p.51), 208(c). As an initial matter, as discussed above, Lumber Liquidators specifically disclosed the *exact same* problems to which Plaintiffs now point and made clear that the industry standard provides that up to 5% of flooring

---

[6] *See also Devine v. Pulte Home Corp.*, No. 1:15CV1361(JCC/JFA), 2015 WL 8055858, at *4 (E.D. Va. Dec. 4, 2015) (holding descriptions of condominiums as "'luxury'" or "'luxurious'" puffery); *Tatum v. Chrysler Grp. LLC*, Civ. A. No. 10-CV-4269(DMC)(JAD), 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (holding statements that product was "reliable" and "durable" puffery); *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *4 (N.D. Ill. Mar. 20, 2007) (holding statements that product was "durable," "manufactured to high quality standards," and "maintenance free" puffery).

may exhibit manufacturing defects without exceeding the allowable waste factor.[7] Plaintiffs cannot plausibly contend that Lumber Liquidators failed to disclose potential problems expressly acknowledged on the face of their warranty.

Moreover, only a limited universe of omissions are cognizable under the consumer-protection statutes of each state at issue here, and Plaintiffs' allegations do not qualify.

With respect to California, Plaintiffs do not proffer any omissions to support their CLRA or FAL claims. And "for an omission to be actionable under the UCL . . . , it must be either (1) 'contrary to a representation actually made by the defendant' or (2) a 'fact the defendant was obligated to disclose.'" *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006)), *aff'd*, 554 F. App'x 608 (9th Cir. 2014).

The former theory "requires Plaintiffs to plead reliance on at least some misleading partial representations." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984-85 (N.D. Cal. 2015). But, as discussed above, Plaintiff Moylen does not plausibly allege reliance on any affirmative representation. He does not claim to have seen specific statements on Lumber Liquidators'

---

[7] *Compare, e.g.* Ex. 1 at 16, 24, 44 (disclaiming coverage of, inter alia, damages caused by moisture, including "cupping," "warping," "buckling," "peeling," "seam swelling," and "delaminating"; "scratches," including but not limited to scratches "caused by pets" and other everyday items, including "furniture, appliances, tools, heels, toys, etc."; and "[f]ading"), *with* Compl. ¶ 15 (identifying a "host of problems" with Plaintiffs' flooring, including "[v]isible and unsightly scratching in normal everyday use, including but not limited to pet traffic," "[f]ading," and "[w]arping"); *id.* ¶ 94 (stating that Plaintiff Florez "noticed buckling and peeling"); *id.* ¶ 96 (stating that Plaintiff Moylen "noticed scratching, fading, and peeling"); *id.* ¶ 98 (stating that Plaintiff Ryan "noticed warping, cupping, and peeling" and that her flooring "had an inferior ability to withstand . . . scratches"); *id.* ¶ 100 (stating that Plaintiff Hotaling noticed "buckling" and "warping"); *id.* ¶ 102 (stating that Plaintiff Perel "noticed his floor began to swell and warp"); *id.* ¶ 118 (stating that flooring was not merchantable because of, inter alia, "scratches," "warping," and "fading"); *id.* ¶ 141 (stating that Lumber Liquidators "failed to disclose" that its flooring "would scratch," "fade," "bubble," and "delaminate"); *id.* ¶ 170 (complaining that flooring has "become scratched" and "warped").

website before his purchase and otherwise cites puffery or statements that he did not comprehend. *See Sumer v. Carrier Corp.*, Case No. 14-CV-04271-VC, 2015 WL 3630972, at *1 (N.D. Cal. June 10, 2015) (rejecting partial-representation claim where the plaintiff never saw the allegedly misleading document); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (holding that puffery cannot compose a partial representation).

Absent a misleading partial representation, "'a failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive anyone within the meaning of the UCL.'" *Gray*, 2012 WL 313703, at *3 (quoting *Daugherty*, 51 Cal. Rptr. 3d at 128) (alteration and internal quotation marks omitted). "'Although California courts are split on this issue,' the weight of authority suggests that the duty to disclose is limited to safety issues." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *7-9 (C.D. Cal. July 29, 2011)) (alteration omitted). There is no allegation that Lumber Liquidators failed to disclose any safety issue.

The UCL claim fails under the minority view of the duty to disclose as well. Under that standard, such a duty arises, as relevant: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; [or] (3) when the defendant actively conceals a material fact from the plaintiff." *Wilson*, 668 F.3d at 1142 (quoting *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D. Cal. 2007)); *see also Gray*, 2012 WL 313703, at *3.

The Representative Complaint makes no attempt to allege a fiduciary relationship. Nor does it sufficiently allege active concealment. "An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts . . . ." *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013). Here, the

pleading "fail[s] to allege with the requisite specificity" under Rule 9(b) how Lumber

Liquidators "'sought to suppress information in the public domain or obscure consumers' ability'

to discover information regarding the alleged [defect]." *Id.* (quoting *Gray*, 2012 WL 313703, at

*10). Plaintiffs "offer nothing more than 'conclusory' allegations" that Lumber Liquidators

concealed information. *Id.* (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal.

2010)). The allegation that Lumber Liquidators' representatives suggested causes other than a

durability defect, Compl. ¶ 81, does not plausibly allege the intentional hiding of information.

Finally, the Representative Complaint posits that Lumber Liquidators knew about

problems with its flooring for three reasons. All fail as a matter of law. First, Plaintiffs suggest

willful blindness because Lumber Liquidators "negotiat[ed] steep price discounts with Chinese

manufactures [sic]." Compl. ¶ 46; *see also id.* ¶¶ 52, 55. But "act[ing] to increase sales/profits,

a generalized motive that could be possessed by any corporate actor . . . is insufficient" both to

show "'exclusive knowledge'" of a defect and to plead fraud with particularity under Rule 9(b).

*Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 560-61 (S.D.N.Y. 2016).

Second, as discussed above, Plaintiffs regurgitate a handful of supposed customer

complaints from remote corners of the Internet, Compl. ¶¶ 127-39, and allege that someone

purporting to represent Lumber Liquidators responded to one, *id.* ¶ 137. Some comments

concern engineered wood, not laminate. *Id.* ¶¶ 136, 138. In any event, "allegations of a few

complaints on the Internet are insufficient to support [the] claim that [the defendant] engaged in

corporate fraud by making misrepresentations and omissions regarding a known defect." *Baba

v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011).[8]

---

[8] *See also Gold*, 2015 WL 7888906, at *8 (holding that the "sample internet complaints
cited by Plaintiffs" did "not 'plausibly' plead[] that Lumber Liquidators was on notice of any
defect at the time Plaintiffs purchased their flooring" (quoting *Iqbal*, 556 U.S. at 678));

Third, Plaintiffs assert that Lumber Liquidators "received notice" of problems "through its own product testing [and] its 'robust Quality Assurance program.'" Compl. ¶ 123; *see also id.* ¶ 142. But they simply allege the *existence* of these assessments: they fail to plead anything about their *results*. That is insufficient to state the requisite knowledge. *See Wilson*, 668 F.3d at 1146-47 (holding that assertion that the defendant "had access to the aggregate information and [relevant] data" was "speculative and does not suggest how any tests or information could have alerted [the defendant] to the defect" (internal quotation marks omitted)).[9]

Plaintiffs' non-California consumer-protection claims fail for similar reasons. Virginia requires a duty to disclose based on factors similar to California's. As the Fourth Circuit has explained, "the failure to disclose information is generally not actionable as fraudulent concealment in the absence of some duty to disclose." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999). And, when parties are engaged in an arm's length transaction,

> [a] duty may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure).

---

*Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) ("[T]he complaints posted on [the defendant's] consumer website merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [the defendant] had knowledge [of the alleged defect].").

[9] *See also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud . . . ."); *Taragan*, 2013 WL 3157918, at *6 ("To comport with Rule 9(b), a plaintiff alleging the existence of a duty to disclose must offer 'specific substantiating facts' demonstrating that the defendant has 'exclusive knowledge' about an alleged defect—not merely that the defendant has a superior understanding about the product's design generally." (quoting *Tietsworth*, 720 F. Supp. 2d at 1134)). In addition to invoking the UCL's fraudulent-practices prong, the Representative Complaint includes attempts to state claims under the unlawful- and unfair-practices prongs. *See* Compl. ¶¶ 168-69. These fail on reliance grounds, as suggested above. Moreover, the former fails for the reasons that the other causes of action here are subject to dismissal. *See* Compl. ¶ 168. And the latter is totally conclusory and, for the record, unsupportable. *See id.* ¶ 169.

*Id*. at 829 (internal citations omitted);  *see also Koschene v. Hutchinson*, 73 Va. Cir. 103, 107 (2007) (explaining that "[c]ommon law standards of what constitutes a misrepresentation of fact govern" under the VCPA (citing *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 716 (Va. 2001))).  Nevada law hews to a similar standard.  *See Mallory v. McCarthy & Holthus, LLP*, No. 2:14-CV-00396-KJD, 2015 WL 2185413, at *3 (D. Nev. May 11, 2015) (dismissing NDTPA claim based on common-law principles because "Plaintiffs do not identify how Defendant is bound . . . to disclose the information");  *Nelson v. Heer*, 163 P.3d 420, 426 n.25 (2007) (stating duty standard as whether the defendant "knew or should have known that the [alleged defect] was a material factor [that the plaintiff] would have considered when purchasing the [product]").  For all of the reasons described above, the Representative Complaint cannot pass these tests.

Alabama and New York require knowledge of the alleged defect.  *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) (ADTPA claim); *Gomez-Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 58 (N.Y. App. Div. 2012).  Again for the reasons explained above, the Representative Complaint does not adequately allege such knowledge.

The Court should dismiss Plaintiffs' consumer-protection claims.

## III.   The Representative Complaint does not state a fraudulent-concealment claim.

Each state's fraudulent-concealment cause of action includes at least the following elements, usually along with an intent to induce reliance or to defraud: (1) failure to disclose a material fact, (2) a duty to disclose, (3) reliance, and (4) resulting damages.  *See Bank of Montreal*, 193 F.3d at 827; *Lasao v. Stearns Lending Co.*, No. 2:10-CV-01864-KJD-LRL, 2011 WL 3273923, at *6 (D. Nev. July 29, 2011); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 332 (Cal. Ct. App. 2008); *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So.2d 1288, 1293 (Ala. 1993).  The claims here fall well short, essentially for the reasons already described.

First, in California, "for the omission to be material, the failure must pose safety concerns." *Herremans v. BMW of N. Am., LLC*, Case No. CV 14-02363 MMM (PJWx), 2015 WL 12712082, at *8 (C.D. Cal. Feb. 19, 2015) (internal quotation marks omitted). No such concerns are implicated here. In addition, many of the "facts" that the Representative Complaint alleges that Lumber Liquidators failed to disclose are simply the converse of the affirmative representations to which Plaintiffs point. *See, e.g.*, Compl. ¶ 141 (alleging failure to disclose that flooring was "not 'premium,'" "not 'very durable,'" and "not AC3 rated"). Because any such statements were mere puffery or, with respect to the latter, were incomprehensible not only to Plaintiffs but to a reasonable consumer, as established above, they were immaterial as a matter of law. So, too, with those statements repackaged as omissions.

Second, the Representative Complaint does not plead a duty to disclose. In California and Virginia, the same standards govern this inquiry under the common law as under the statutes discussed above. *See Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009); *Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 963 (C.D. Cal. 2014), *aff'd*, 602 F. App'x 403 (9th Cir. 2015); *Koschene*, 73 Va. Cir. at 107. The claims thus fail on the same grounds. And the test for a duty to disclose in New York is the same as in California and Virginia. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (requiring a "partial or ambiguous statement"; a "fiduciary or confidential relationship"; or that "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" (internal quotation marks omitted)). The New York fraudulent-concealment claim thus falls with the California and Virginia claims.

Alabama and Nevada law are even stricter. In Alabama, absent active concealment, "[w]hen the parties to a transaction deal with each other at arm's length, with no confidential

relationship, no obligation to disclose information arises when the information is not requested." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995). Plaintiff Florez does not allege that Lumber Liquidators refused to provide requested information. In Nevada, besides where a fiduciary duty exists, "[a] duty to disclose may also arise where the parties enjoy a 'special relationship,' that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998), *overruled on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). That requires "the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party." *Id.* (internal quotation marks omitted). Plaintiff Ryan alleges no "special relationship"—just an ordinary consumer one. And she does not sufficiently allege that Lumber Liquidators had knowledge of the supposed facts underlying her claim. Plaintiffs fail to plead a duty to disclose.

For the reasons discussed earlier, the Representative Complaint also comes up short under the third and fourth elements of fraudulent concealment, as outlined above: reliance and causation. Thus, the Court should dismiss all of Plaintiffs' fraudulent-concealment claims.

## IV. Plaintiffs do not adequately plead the implied-warranty or Magnuson-Moss claims.

Besides failing for lack of pre-suit notice, as established above, Plaintiffs' warranty claims are inadequately pleaded for numerous substantive reasons. As an initial matter, the limited warranty makes store credit the sole remedy for defective flooring, as discussed earlier, such that the law of each state at issue forecloses other remedies. *See* Ala. Code § 7-2-719(1)(b) (providing that where "the remedy is expressly agreed to be exclusive, . . . it is the sole remedy"); Cal. Com. Code § 2719(1)(b) (same); Nev. Rev. Stat. Ann. § 104.2719(1)(b) (same); N.Y. U.C.C. Law § 2-719(1)(b) (same); Va. Code Ann. § 8.2-719(1)(b) (same). Plaintiffs do not allege that Lumber Liquidators refused to provide store credit. Thus, all of their warranty claims

fail.  *See, e.g., Frenzel,* 76 F. Supp. 3d at 1020.  The warranty claims also fall short of the

applicable pleading standards for the following additional reasons.

### A.    Plaintiffs' implied-warranty claims fail because they do not plausibly allege that their flooring was unfit for its ordinary purpose.

Plaintiffs claim that Lumber Liquidators violated the implied warranty of merchantability

of each of the subject states because their flooring "does not have an AC rating of AC3";

"prematurely fail[s] due to scratches, impacts, warping, fading, stains, and edge curling"; and is

"not fit for general residential use." Compl. ¶ 118.

"The core test of merchantability is fitness for the ordinary purpose for which such goods

are used." *Mexia v. Rinker Boat Co.,* 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009) (internal

quotation marks omitted).[10]  "Such fitness is shown if the product is in safe condition and

substantially free of defects." *Mexia,* 95 Cal. Rptr. 3d at 289 (internal quotation marks omitted).

That sets a high bar: only a product that is "not minimally safe for its expected purpose" falls

short. *Hollman,* 928 F. Supp. 2d at 681 (internal quotation marks omitted).[11]

Plaintiffs cannot clear this hurdle. The ordinary purpose of residential flooring is to

provide a supportive platform on which people can move and property can rest. No Plaintiff

alleges that his or her flooring was not minimally safe for that expected purpose. Instead,

Plaintiffs' protests are essentially aesthetic. *See* Compl. ¶ 15 (alleging "[v]isible and unsightly

scratching," "[w]ear patterns that expose and deteriorate the photographic paper layer,"

"[c]hipping," "[f]ading," "[b]ubbling," "[w]arping/curling," and "[s]taining"); *see also id.* ¶ 118

---

[10] *See also Cowan v. J.C. Penney Co.,* 790 F.2d 1529, 1532 (11th Cir. 1986); *Hollman v. Taser Int'l, Inc.,* 928 F. Supp. 2d 657, 681 (E.D.N.Y. 2013); *Bayliner Marine Corp. v. Crow,* 509 S.E.2d 499, 503 (Va. 1999); *Havas v. Love,* 514 P.2d 1187, 1188 (Nev. 1973).

[11] *See also Bayliner,* 509 S.E.2d at 503 (stating that inquiry is whether products are "reasonably capable of performing their ordinary functions"); *Mocek v. Alfa Leisure, Inc.,* 7 Cal. Rptr. 3d 546, 549 (Cal. Ct. App. 2003) (stating that product must lack "even the most basic degree of fitness for ordinary use").

(similar).   Such allegations  do not properly  assert that any product  was unmerchantable.  *See*

*Carey v. Chaparral Boats, Inc.*, 514 F. Supp.  2d 1152, 1156  (D. Minn.  2007) (granting  defendant

summary  judgment  on a merchantability  claim  where "the overwhelming  evidence  demonstrates

that the [product's  defects] are a cosmetic  problem  and in no way impact [its] ordinary  use").

The Court should  Plaintiffs'  merchantability  claims.[12]

### B.   The Magnuson-Moss claim fails because Plaintiffs do not adequately allege a breach of any written or implied warranty.

The Magnuson-Moss  Warranty  Act provides  a federal  cause of action to consumers  who

are "damaged  by the failure  of a supplier,  warrantor,  or service contractor  to comply  with any

obligation  under this chapter,  or under a written warranty,  implied  warranty,  or service contract."

15 U.S.C. § 2310(d)(1).  Plaintiffs  claim that "Lumber  Liquidators  breached its warranties

(express and implied)  by manufacturing,  selling,  and/or distributing"  flooring  that was "not 'very

durable,'  not 'scratch resistant,'  which fail[ed]  prematurely  long before the expiration  of the

stated warranty  duration,  and [which had] an Abrasion Class rating below  'AC3,' without

knowledge  of the truth of such representations."  Compl.  ¶ 157.

A "written warranty"  for purposes  of Magnuson-Moss  is

(A) any written affirmation  of fact or written promise  made in connection  with the
sale of a consumer  product by a supplier  to a buyer which relates to the nature of
the material  or workmanship  and affirms  or promises  that such material  or
workmanship  is defect free or will meet a specified  level of performance  over a
specified  period  of time, or

(B) any undertaking  in writing  in connection  with the sale by a supplier  of a

---

[12] The Representative  Complaint  also alludes to the implied  warranty of fitness for a
particular  purpose.  *See* Compl.  ¶¶ 110(e), 119.  But it does not plead that any Plaintiff purchased
flooring  for a particular  purpose  (as opposed to its ordinary  purpose).  Indeed, Plaintiffs  concede
as much.  *See* Compl. ¶ 94 ("Ms. Florez has used Defendant's  product as it was intended  to be
used for normal  residential  traffic . . . ."); *id.* ¶ 96 (same for Plaintiff Moylen); *id.* ¶ 98 (same for
Plaintiff Ryan); *id.* ¶ 100 (same for Plaintiff Hotaling); *id.* ¶ 102 (same for Plaintiff Perel).  "An
action for breach of the warranty for a particular  purpose  is thus unavailable  . . . ." *DiIenno v.
Libbey Glass Div., Owens-Ill., Inc.*, 668 F. Supp.  373, 376-77  (D. Del. 1987).

consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A), (B).

A mere "product description does not constitute a written warranty under [Magnuson-Moss]." *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *13 (N.D. Cal. May 15, 2013). That is because a product description does not affirm or promise that a product's material or workmanship is defect free or will meet a specified level of performance, as § 2301(6)(A) requires.[13] And the lack of a "temporal element," such that a statement does not promise anything over a specific period of time, is also dispositive. *See* 16 C.F.R. § 700.3(a).[14]

The Representative Complaint does not allege that Lumber Liquidators breached a written warranty under § 2301(6)(A). As to representations outside of the limited warranty (e.g., on Lumber Liquidators' website): statements that flooring is "very durable," "scratch resistant," or possesses some AC rating, etc., are mere product descriptions and lack any temporal element.

---

[13] *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012); *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012); *Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.)*, Nos. MDL-1703, 05 C 4742, & 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006).

[14] *See In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa 2013); *Viggiano*, 944 F. Supp. 2d at 898; *Hairston*, 2012 WL 1893818, at *6; *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *3-5 (W.D. Wash. Sept. 10, 2007); *see also Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("[T]he need for a clearly circumscribed definition in the statutory scheme before us is apparent since, to comply with the Act's obligations, manufacturers and suppliers must know in advance exactly which representations are subject to those obligations. Moreover, it is quite plausible that the Act's draftsmen defined 'written warranty' in [§ 2301(6)] so as to exclude general descriptions of consumer products or their components from the reach of the Act, since it would be excessively cumbersome to impose the Act's disclosure rules on every advertisement containing a description of a product or its components.").

Moreover, puffery is "not actionable under a theory of breach of express warranty." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012) (citing *Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011)).

As to the limited warranty itself: "an express warranty with a limited time period does not mean that a seller is promising a defect-free product" during that period. *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013).[15]  And here, the warranty specifically disclaims coverage for manufacturing defects covering less than 5% of a person's flooring and for certain other issues, including many on which Plaintiffs explicitly rest their claims, as explained above. *See In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1526, 1532 (E.D. Mo. 1997) (dismissing claim that the defendant promised cars "free of defects" because actual warranty contradicted any such promise).  Accordingly, Plaintiffs have not adequately alleged breach of the limited warranty under § 2301(6)(A).  Likewise, any claim under § 2301(6)(B) falls flat for failure to allege that Lumber Liquidators has declined to provide store credit for a covered defect, the only remedial action specified in the limited warranty.  Finally, to the extent that reliance is required to state a claim for breach of express warranty, *see T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015); *Gale v. Int'l Bus. Mach. Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004), the Representative Complaint fails to allege that any Plaintiff actually relied on the terms of the limited warranty in making his or her purchasing decision.[16]

---

[15] *See also Koch v. Kaz USA, Inc.*, Civ. A. No. 09-cv-02976-LTB-BNB, 2011 WL 2610198, at *5 (D. Colo. July 1, 2011); *Kent v. Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 WL 2681767, at *8 (N.D. Cal. July 6, 2010).

[16] Plaintiffs also state that Lumber Liquidators violated another provision of Magnuson-Moss, 15 U.S.C. § 2302, by failing to make a full and conspicuous disclosure of the limited warranty. Compl. ¶ 158. But that claim is entirely conclusory, and the cited statute imposes obligations only "to the extent required by rules of the [Federal Trade] Commission," 15

As mentioned, Magnuson-Moss also provides a federal cause of action for implied-warranty claims. Such a claim "aris[es] under"—and thus incorporates—"State Law." 15 U.S.C. § 2301(7); *see also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989). Because Magnuson-Moss claims are "subject to the same pleading requirements and defenses as . . . state law warranty claims," *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2005), the implied-warranty component of this cause of action succumbs to the same flaws as Plaintiffs' other implied-warranty claims.[17]

## CONCLUSION

For the foregoing reasons, Lumber Liquidators respectfully requests that the Court dismiss the Representative Complaint in full and with prejudice.

DATED: March 20, 2017

Respectfully submitted,

LUMBER LIQUIDATORS, INC.

By Counsel

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)

*Counsel for Defendant Lumber Liquidators, Inc.*

---

U.S.C.A. § 2302(a). The Representative Complaint points to no such rules.

[17] Plaintiffs' attempts to "bootstrap" warranty claims into other claims fail for the same reasons explained here. *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007).

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system and in accordance with Local Rules. This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who have consented to electronic service.

I also hereby certify that, on the same day, a true and correct copy of the foregoing was served by U.S. Mail upon any remaining parties.

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)

*Counsel for Defendant Lumber Liquidators, Inc.*