IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION, | MDL No. 1:15-md-02627 (AJT/TRJ) |
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED LAMINATE FLOORING DURABILITY MARKETING AND SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 1:16-md-02743 (AJT/TRJ) |
| This Document Relates to ALL Cases | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ........................................................................................................... 1

II. UPDATED INFORMATION ........................................................................................ 2

III. ARGUMENT ................................................................................................................ 5

    A. The Response of the Class Shows the Settlement Is Fair, Reasonable, And Adequate. .................................................................................................................. 5

    B. The Objections Do Not Show That the Settlement is Unfair, Inadequate, or Unreasonable. .......................................................................................................... 8

        *1. Several Objections Are Deficient and the Court Should Reject Them.* .......................................................................................................... 8

        *2. Objections That the Settlement Did Not Obtain Full Relief Lack Merit.* ............................................................................................................ 9

        *3. The Claims Process and Notice Were Proper.* ......................................... 11

    C. The Myriad of Objections as to Adequacy and Fairness Asserted by the Professional Objector Lack Merit. ........................................................................ 12

        *1. The Court Should Consider the Intent of the Professional Objectors.* ...................................................................................................... 12

        *2. The Objections Asserted by the Serial Objectors Lack Merit.* .................. 17

    D. The Objections to the Requested Attorneys' Fees Lack Merit. ............................ 21

    E. The Court Should Require a Sizeable Appeal Bond to Protect the Class From Unnecessary Appeals. ................................................................................. 25

V. CONCLUSION ............................................................................................................ 26

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. JPMorgan Chase Bank, N.A.*,
  No. 13-8285, Dkt No. 102 (N.D. Ill, Nov. 12, 2015)..................................................26

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-md-02617-LHK, 2018 WL 3872788 (N.D. Cal. Aug. 15, 2018) ...............................21

*Birchmeier v. Caribbean Cruise Line*,
  No. 12-cv-04069 (N.D. Ill.) .................................................................13

*Brunson v. Louisiana-Pacific Corp.*,
  818 F.Supp.2d 922 (D.S.C. 2011)........................................................11

*In re Cathode Ray Tube Antitrust (CRT) Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012).........................................................14

*Chambers v. Whirlpool Corp.*,
  2016 WL 5922456 (C.D. Cal. Oct. 11, 2016)............................................23

*Chambers v. Whirlpool Corp.*,
  No. 11-cv-01733 (C.D. Cal.) ...............................................................13

*Chriswell v. Big Score Entertainment LLC*,
  No. 11-cv-00861, 2013 WL 315743 (N.D. Ill. Jan. 28, 2013)................................16

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...............................................................7

*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*,
  465 F. App'x 617 (9th Cir. 2012) .........................................................23

*Conroy v. 3M Corp.*,
  No. C00-2810, 2006 U.S. Dist. Lexis 96169 (S.D. Cal. Aug. 10, 2006)................................26

*Davis v. Cole Haan, Inc.*,
  2015 U.S. Dist. Lexis 153434 (N.D. Cal. Nov. 12, 2015)....................................24

*Dennings v. Clearwire Corp.*,
  No. 10-cv-01859, Dkt. No. 166 (W.D. Wash. Aug. 20, 2013).........................................14, 26

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002)..............................................................................12

*Domonoske v. Bank of Am., N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ...................................................................7

*Ebarle v. Lifelock, Inc.*,
    No. 3:15-cv-00258-HSG, 2016 WL 3610843 (N.D. Cal. May 13, 2016) ..............16

*Edelson PC v. Bandas Law Firm PC*,
    No. 16 C 11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018)............................13, 17

*Embry v. ACER Am. Corp.*,
    2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) ...............................................14, 26

*Espinosa v. Ahearn*,
    2018 U.S. App. Lexis 1626 (9th Cir. Jan. 23, 2018) ......................................20, 21

*Gajewski v. Ocwen Loan Servicing LLC*,
    No. 14–cv–9230, 2015 WL 3961611 (N.D. Ill. June 25, 2015) ................17, 18, 19

*Garber v. Commissioner of Baseball*,
    No. 12-cv-03704 (S.D.N.Y.).............................................................................13, 15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. 2010) .....................................................................7

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) .................................................................................5

*Gemelas v. Dannon Co., Inc.*,
    1:08-cv-236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ...............................26

*Glaberson v. Comcast Corp.*,
    No. 03-6604, 2015 WL 7887788 (E.D. Pa. Dec. 3, 2015)....................................25

*Hall v. Bank of Am., N.A.*,
    No. 12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014).............................7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................9

*Heekin v. Anthem*,
    No. 05-cv-01908, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013).............................16

*Hooker v. Sirius XM Radio, Inc.*,
    No. 4:13-cv-003, 2017 WL 4484258 (E.D. Va. May 11, 2017).............................24

*In re Hydroxycut Mktg. and Sales Prac. Litig.*,
    Nos. 09-md-2087 BTM (KSC), 09-cv-1088 BTM (KSC), 2014 WL 815394
    (S.D. Cal. Mar. 3, 2014)........................................................................................17

*In re Hyrdoxycut Mktg. & Sales Practices Litig.*,
  2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) .......................................................................14

*In re Hyundai & Kia Fuel Econ. Litig.*,
  897 F.3d 1003, No. 15-56014, 2018 WL 3597310 (9th Cir. July 27, 2018) ..........................21

*Jabbari v. Wells Fargo*,
  No. 1:15-cv-2159 (N.D. Cal.) ....................................................................................... *passim*

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) .....................................................................................5, 10, 19

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ...................................................................................................5

*In re Law Office of Jonathan E. Fortman, LLC*,
  No. 4:13MC00042 AGF, 2013 WL 414476 (E.D. Mo. Feb. 1, 2013) ....................................12

*In re Lease Oil Antitrust Litig.*,
  MDL 1206, 2009 WL 5195977 (S.D. Tex. Dec. 22, 2009) ....................................................20

*Lee v. Enter. Leasing Co.*,
  2015 WL 2345540 (D. Nev. May 15, 2015) ...........................................................................23

*Lee v. Ocwen Loan Servicing, LLC*,
  No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) .............................................7

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................................10

*Markos et al. v. Wells Fargo Bank, N.A.*,
  No. 1:15-cv-01156-LMM (N.D. Ga. Jan. 16, 2017)..............................................................17

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007).....................................................................................................20

*Mehigan v. Ascena Retail Grp.*,
  No. 15-cv-00724 (E.D. Pa.) .....................................................................................................13

*Messineo v. Ocwen Loan Servicing, LLC*,
  No. 15-cv-02076-BLF, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017) .......................................6

*In re Microsoft Corp. Antitrust Litig.*,
  185 F. Supp. 2d 519 (D. Md. 2002) .........................................................................................20

*In re MicroStrategy, Inc. Sec. Ligit.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................................................5

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.d. 246 (E.D. Va. 2009) ...................................................................................22

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .....................................................................................23

*Perkins v. LinkedIn Corp.*,
    No. 13-cv-04303 (N.D. Cal.) ......................................................................................13

*In re Petrobras Sec. Litig.*,
    14-cv-9662 (S.D.N.Y Sept. 19, 2018) ......................................................................12

*Rawa v. Monsanto*,
    No. 17-cv-01252 (E.D. Mo.) .....................................................................................13

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .....................................................................................24

*Rougvie v. Ascena Retail Grp., Inc.*,
    No. CV 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016) ..................................24

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    461 F.Supp.2d 383 (D. Md. 2006) ............................................................................16

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ............................................................23

*Sky Cable, LLC v. Coley*,
    No. 5:11-cv-48, 2016 WL 8138819 (W.D. Va. December 5, 2012) .........................26

*Smith, et al. v. Floor & Decor Outlets of America Inc.*,
    Case No. 1:15-cv-04316-ELR (N.D. Ga.) ..................................................................6

*Snell v. Allianz Life Ins. Co. of N. Am.*,
    No. Civ. 97-2784 RLE, 2000 WL 1336640 (D. Minn. September 8, 2000) .............12

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)........................................................................................5

*Sylvester v. CIGNA Corp.*,
    369 F. Supp. 2d 34 (D. Me. 2005) ..............................................................................6

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................................................24

*In re UnitedHealth Grp. PSLRA Litig.*,
    643 F. Supp. 2d 1107 (D. Minn. 2009)......................................................................12

*In re Uponor, Inc.*,
   No. 11-md-2247 ....................................................................................................25

*Vergara v. Uber Tech.*,
   No. 15-cv-06942 (N.D. Ill.) ..................................................................................13

*In re Wachovia Corp. ERISA Litig.*,
   No. 3:09-cv-262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) .............................7

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
   No. 5:09-MD-02015-JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011)...................9

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
   2010 WL 786513 (D. Nev. Mar. 8, 2010) .........................................................14, 26

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   MDL-C-07018841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)................26

*Williamson v. McAfee, Inc.*,
   5:14-cv-00158-EJD, Dkt. No. 114 (N.D. Ca. Feb. 3, 2017) ..................................23

## STATUTES

28 U.S.C. § 1712(a) ....................................................................................................22

Class Action Fairness Act ................................................................................ *passim*

## OTHER AUTHORITIES

Federal Rule of Appellate Procedure 7 ....................................................................2, 25

Federal Rule of Civil Procedure 11 .....................................................................16, 17

Federal Rule of Civil Procedure 23 ...........................................................................11

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623,
   1625 (2009) ............................................................................................................12

# I.       INTRODUCTION

As detailed in prior briefing, the relief obtained under the Settlement[1] for purchasers of

Defendant Lumber Liquidators' Chinese-manufactured laminate flooring represents an

exceptional recovery for the Class. Under the law, it is deserving of this Court's final approval.

The Class's reaction to the Settlement has been overwhelmingly positive: out of the

approximately 760,000 class members, only 97 have requested exclusion, and just twelve filed

objections. This minimal level of opposition strongly favors approval of the Settlement. Further,

the substance of the objections also should not prevent final approval. Most may be overruled as

class members wishing for a larger settlement, ignoring the risks of continued litigation and

Lumber's limited cash resources. Several of the objectors also complain about the attorneys' fees

sought. These objections minimize the voucher option of the settlement - $14 million of store

credit, distributed *pro rata*, transferable to family members, and non-reversionary. Claimants

selecting this option for themselves or a family member can obtain significant value that can

used for the replacement, purchase, and installation of new flooring by Lumber Liquidators. The

voucher, currently estimated at $659 for the average class member is not a "coupon" unlikely to

be redeemed. The value of the vouchers should be included in assessing the request for

attorneys' fees.

Finally, at least two professional or serial objectors (Michael Clore of Bandas Law Firm,

on behalf of Diana Cantu-Guerrero, and Lisa Piazza appearing ostensibly pro se, but with an

apparently ghost-written objection) have raised a multitude of meritless objections.  A notice for

Ms. Piazza's deposition has not been acknowledged, and the Bandas Law Firm did not even

---

[1] Unless otherwise noted, capitalized terms have the meanings set out in the Settlement
Agreement filed with the Motion for Preliminary Approval. ECF No. 1339-2. All citations to the
docket (ECF No.) are to 15-md-02627 unless specified to the Durability MDL, 16-md-02743.

appear for a deposition of Ms. Guerrero. In fact, the Bandas Law Firm boldly instructs its clients not to expect it to present their objections to the district court, even though that might reduce the chances of the objection's success. These objections are placeholders for an appeal of Settlement approval by this Court, where these professional objectors can try to extort money from Class Counsel pending appeal. While Class Counsel will not pay any such settlement "tax," an appeal of this Court's approval of settlement will delay class members from getting the relief they deserve. Class Counsel request that the Court exercise its discretion under Federal Rule of Appellate Procedure 7 to include a bond requirement for any appeals requiring objectors to assume the costs of delay to class members of at least $50,000.

## II.    UPDATED INFORMATION

Since Class Counsel filed its motion for final approval on August 17, 2018, additional claims have been filed, and the paper claims have been reviewed. Here are the current numbers:

| | |
|---|---:|
| **Total Unique Eligible Class Members** | **761,390** |
| **CARB  1 Class Members** | **231,220** |
| **CARB 2/Durability Class Members** | **520,809** |
| **CARB 1 and 2 Class Members** | **9,361** |
| **Total Eligible Claims Received:** | **178,859** |
| **CARB1** | **35,341** |
| **CARB2/Durability** | **141,827** |
| **CARB1 and CARB2** | **2,231** |
| **Timely Exclusion Requests Received (Eligible Class Members)** | 93[2] |
| **Objections Received:** | 12 |

Due to the fantastic work of the Settlement Administrator (Angeion) in its design and execution of the notice plan, the claims rate exceeded expectations of the typical single-digit

---

[2] Attached hereto as Exhibit 7 is an updated list of the Class Members who have timely requested exclusion from the Settlement.

response in consumer class actions. The deadline for opting out and objecting passed on

September 4, 2018. The opt-out rate is miniscule at 0.0127%. The objection ratio was even tinier

- 0.0014%. The twelve objections include:

- Susan Knispel ("Knispel") objects that the relief is based on the purchase price of flooring only and is not sufficient to cover the costs of testing her flooring and removal of it. She also complains that the postcard notice (which contained a tearaway return postcard with pre-paid postage)[3] lacked a claim for or envelope to file a claim (ECF No. 1648);

- Lin Doss ("Doss") objects that the relief is not sufficient to address medical issues affecting her and her pets that she ascribes to the flooring. She also complains that the postcard notice (which contained a tearaway return postcard with pre-paid postage) lacked a claim for or envelope to file a claim. ECF No. 1674. On September 4, 2018, Ms. Doss voided her objection by requesting exclusion from the class. *See* Decl. of Douglas J. McNamara ("McNamara Decl.") at Ex. A (which has been redacted to remove Ms. Doss's personal information);

- Mary Martin ("Martin") objects that the relief is based on the purchase price of flooring only and not the cost of installation. She also (incorrectly) objects that the Settlement releases any further claims she may have under her 50-year warranty (ECF No. 1651);[4]

- Roger McKinzie ("McKinzie") objects that the relief provided is not sufficient and that fees and expenses seem to be too high (ECF No. 1662);

- Melvin and Sheila Coates ("Coates") object that the relief is not sufficient to cover the costs of removal, replacement, and installation of new floor (ECF No. No. 1664);

---

[3] As noted by the Claims Administrator:

"Furthermore, the Class Members will receive individualized notice keyed to their specific class. (Exs. B, C. and D.) Therefore, class members from each class (CARB2/Durability Class, CARB1 Class, and those who are in both Classes) will receive an appropriately-tailored postcard that explains the rights and obligations relative to that class. All postcards will contain a detachable claim form Class Members can mail in at no cost."
ECF No. 1339-2 at 72.

[4] The Settlement Agreement expressly states, "Nor shall the Released Claims extinguish any existing express warranty rights that do not pertain to the allegations in the Durability MDL or the Formaldehyde MDL, to the extent they exist." ECF No. 1339-2 at 36.

- Timothy and Kari Bianchi ("Bianchi") object to the relief offered as insufficient in light of Lumber Liquidators' conduct, citing a non-precedential Ninth Circuit case (MDL No. 2743, ECF No. 143);

- Janet Goetz ("Goetz") objects that the flooring caused her lung cancer and that the estimates of potential return from choosing cash or the store credit were not clear (ECF No. 1671);[5]

- Laura Hatchel ("Hatchel") appears to be objecting to the relief offered under the settlement given the loss of her pets, which she attributes to formaldehyde (ECF No. 1675);

- Gerard Dotti ("Dotti") objects that the relief offered for CARB1 class is too low given the formaldehyde results he obtained from his own testing (ECF No. 1672);[6]

- Brice Johnston ("Johnston"), an attorney, objects to the Request for Attorneys' Fees for including the $14 million in vouchers as part of the Settlement Fund and cites the Class Action Fairness Act (ECF No. 1673);

- Edward Proctor ("Proctor"), a civil defense attorney, objects to the Request for Attorneys' Fees for including the $14 million in vouchers and not just the $22 million in cash, also citing the Class Action Fairness Act (ECF No. 1656);

- Jill Piazza ("Piazza") objects that the settlement cannot be done on a fifty-state basis, citing to a withdrawn opinion by the Ninth Circuit (MDL 2743, ECF No. 149)). Ms. Piazza's objection mimics the one she filed in *Jabbari v. Wells Fargo*, No. 1:15-cv-2159 (N.D. Cal.), that one signed by a lawyer, and she has filed other objections in at least two other class actions. Her objection here appears to be ghost-written by her prior counsel; and

- Diana Cantu-Guerrero, who is represented by a serial objector, the Bandas Law Firm, makes many objections, such as to the inclusion of a "quick pay" provision, the relief, the possible use of *cy pres* for residual funds after distribution to the Class, and the Request for Attorneys' Fees, invoking the Class Action Fairness Act (MDL No. 2743 ECF. No. 140) (hereafter, "Bandas Objection").

As described more fully below, none of the objections should preclude final approval of

---

[5] Class Counsel reached Ms. Goetz by email, and spoke with her at length about her objection, including her health claim. Ms. Goetz was unsure if she wished to opt out and pursue a personal injury case. McNamara Decl. at ¶ 7. We await word as to whether she would like to convert her objection to an opt out or participate in the economic injury settlement. *Id*. at ¶ 7.

[6] Mr. Dotti used a device he purchased to test his flooring as opposed to the testing method created by CARB. McNamara Decl. at ¶ 8.

settlement and Class Counsel's petitions for fees and expenses. Furthermore, given the appearance of professional objectors, Class Counsel asks the Court to impose a bond for any appeal of this Court's order to protect Class Members from the risks associated with frivolous appeals and delays in obtaining the proceeds of the settlement.

## III.    ARGUMENT

### A.    The Response of the Class Shows the Settlement Is Fair, Reasonable, And Adequate.

Class Counsel previously detailed how the Settlement met the standards for a fair, reasonable, and adequate settlement. ECF No. 1618 at 15-24, citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991) and *In re MicroStrategy, Inc. Sec. Ligit.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). The only factor to update the Court on in this response of the class to the settlement. *Jiffy Lube*, 927 F.2d at 159; *MicroStrategy*, 148 F. Supp. 2d at 665.

Since Class Counsel's August 17th filing, Class Counsel has received more exclusions and objections, but these remain a miniscule fraction of the class members and their responses. According to Angeion, the Court-appointed Settlement Administrator, it has received 178,859 claims filed by eligible class members out of a class of 761,390– an astounding 23.49% of the class. McNamara Decl. at ¶ 2.[7] This is many times above the claims rates at which courts routinely grant final approval settlements at this number and lower. *See, e.g Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) (holding that a "claim rate as low as 3 percent is hardly unusual in consumer class actions"); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (citing to claims administrator Dahl "that response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent, indicates that the 8 percent

---

[7] The numbers are still likely to changes as the Settlement Administrators reviews claims, and the Claims Period does not end until October 13, 2018.

response rate was well within the acceptable range for a consumer class action."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence suggesting that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns*); Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076-BLF, 2017 WL 733219, *7 (N.D. Cal. Feb. 24, 2017) (finding 9.26 percent of 9,000 potential class members was "higher than average" for consumer class settlements); *Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) (noting class action settlements "regularly yield response rates of 10 percent or less.").

While the overall rate is exceptional, it means the individual average award amount for claimants selecting cash will be lower than expected. *See* Decl. of Steven Weisbrot ("Weisbrot Decl.") at Ex. 2. The average cash payment for the CARB2/Durability class is about 5.5% of the average purchase price, below the 20% range Class Counsel had anticipated. *Id.* at ¶ 5. The average voucher award is currently 59% of the purchase prices, which is within the 38%-104% provided in the Class Notice. *Id.* at ¶ 5.

The incredible participation rate of the Class may be partially due to the Notice Program. In addition to direct mail, electronic mail was used, and the reach rate covered well over 99%. Further, Class Counsel and Angeion sought to provide estimated recovery ranges to claimants so each would have a better idea of what they would receive if they participated in the Settlement. Ex. 2 at ¶ 4. The estimates relied on historic participation or "take rates" witnessed by Class Counsel and Angeion, which was pegged at 10%. *Id.* at ¶ 5. Further informing Class Counsel's estimates was the settlement experience in *Smith, et al. v. Floor & Decor Outlets of America Inc.,* Case No. 1:15-cv-04316-ELR (N.D. Ga.). That case also involved claims of Chinese-manufactured laminate flooring with excessive levels of formaldehyde. See Decl. of Alexander

Robertson ("Robertson Decl.") Ex. 3 ¶ 2. The case settled for $14,000,000 on behalf of 127,601

consumers. *Id.* The take rate was 6%, and 64% of class members selected the cash option as

compared to the voucher option. *Id.*

Accompanying the significantly positive class participation response is the paltry

percentages of opt-outs and objectors. The deadline to opt out or object to the settlement passed

on September 4, 2018.[8] The Settlement Administrator reports that 94 class members have timely

requested exclusion, and eleven have served non-mooted objections. One of those objectors, Lin

Doss, also filed a notice of opt out on September 4th, thereby voiding her objection. McNamara

Decl. at Ex. A. Eleven objectors out of 761,390 represents 0.0014% of the class members. The

94 opt-outs amount to 0.0127% of the Class. Class Members' significant participation and

insignificant number of exclusions and objections counsels in favor of granting final approval.

*See, e.g., In re Wachovia Corp. ERISA Litig.,* No. 3:09-cv-262, 2011 WL 7787962, at *4

(W.D.N.C. Oct. 24, 2011) (finding adequacy where only four out of 150,000 class members filed

objections); *Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 577 (9th Cir. 2004) (upholding

approval of settlement where there were 45 objectors and 500 opt-outs out of a pool of 900,000);

*Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (approving

settlement where "there are relatively few objections (59 out of 3,025,689 class members) and

only a small percentage of class members (0.04%) opting out."); *Lee v. Ocwen Loan Servicing,*

*LLC,* No. 14-cv-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (finding 161 opt outs

and four objectors out of 400,000 notice packages to be trivial, and indicative of "near universal

approval" in approving settlement); *Hall v. Bank of Am., N.A.,* No. 12-cv-22700, 2014 WL

---

[8] The actual deadline was September 3, 2018, *i.e.*, 30 days before the final approval
hearing. Prelim. Approval Order at 3, 6. The Settlement Administrator and Class Counsel treat
September 4th as the deadline due to the Labor Day holiday.

7184039, at *5 (S.D. Fla. Dec. 17, 2014) (finding objections of less than .0016% supported

approval); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *15 (N.D. Cal. 2010)

(holding a .4% opt-out rate "is a further indication of the fairness of the Settlement.").

**B.    The Objections Do Not Show That the Settlement is Unfair, Inadequate, or Unreasonable.**

   *1.    Several Objections Are Deficient and the Court Should Reject Them.*

Of the objections filed, several can be rejected by the Court for failing to adhere to the

Settlement's requirements for lodging objections. *See* ECF No. 1339-2 at Section 9(A) & (D).

For example:

- Roger McKinzie's objection does not include: (1) a telephone number, (2) the number of class action settlements objected to in the last three years or (3) whether the objecting class member intends to appear at the Final Approval and Fairness Hearing;

- Timothy and Kari Bianchi's objection does not include: (1) valid proof of membership in the class, (2) the number of class action settlements objected to in the last three years, or (3) whether the objecting class members intends to appear at the Final Approval and Fairness Hearing;

- Melvin and Sheila Coates's objection does not include valid proof of membership in the class;

- Mary Martin's objection does not include: (1) a telephone number, (2) valid proof of membership in the class or (3) the number of class action settlements objected to in the last three years.

- Jill Piazza's objection does not include: (1) a telephone number or (2) the name of her counsel.

The procedural requirements of the Settlement were not mere technicalities issued by the

Court and have sound justifications. For example, Ms. Piazza's decision to withhold the counsel

who drafted her objection prevents the Court from assessing the person behind the objection and his or her motive.[9]

In addition, some of these objections appear to be untimely. They were not sent to Class Counsel or the Court by the September 4th postmark deadline. ECF No. 1664 (Coates); ECF No. 1671 (Goetz); ECF No. 1672 (Dotti); ECF No. 1673 (Johnston); ECF No. 1675 (Hatchel); ECF no. 143 (Bianchi) (filed in the Durability MDL No. 2743 only); ECF No. 149 (Piazza) (filed in the Durability MDL No. 2743 only).

2.    *Objections That the Settlement Did Not Obtain Full Relief Lack Merit.*

Several of the non-professional objectors complain that the settlement did not provide sufficient monetary relief to provide a full refund or the costs of installation and removal of existing flooring. *See, e.g.,* ECF Nos. 1648 (Knispel), 1651 (Martin), 1662 (McKinzie), 1664 (Coates), 1672 (Dotti), and 143 (in MDL 2743) (Bianchi). Costs for installation, for products besides the laminate flooring, or items not provided by Lumber Liquidators cannot be compensated within this litigation.[10] Others complain that they suffered from health issues or the demise of pets, suggesting the proper course of action would be to opt out in favor of a personal injury or other individual law suit. *See, e.g.,* ECF Nos. 1671 (Goetz), 1674 (Doss), 1675 (Hatchel).

Objections that class counsel "should have done better" are routinely rejected. *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.,* No. 5:09-MD-02015-JF, 2011 WL 1877630, at *4 (N.D. Cal. May 17, 2011). Courts recognize that settlements

---

[9] Class Counsel tried to contact Ms. Piazza at the phone number supplied in the Wells Fargo objection, at her email address, and sent her a notice of deposition. She has not responded. McNamara Decl. at ¶ 10.

[10] Class Counsel contacted Objector Mary Martin and explained why certain items on her invoices – such as products used for installation of the laminate flooring were not covered by the Settlement as they were not covered by the litigation. McNamara Decl. at ¶ 6.

necessitate compromise so as to ensure some compensation for the claimants, at the risk of no compensation if the plaintiffs lose at trial. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (noting "the very essence of a settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes."). The objectors do not provide any legal analysis consistent with the *Jiffy Lube* factors as to the strength of the case, the potential that class certification be denied, the reality that each purchaser did receive a functional floor and full refunds are unlikely, and the potential of years of continued litigation with a risk that the claimants get nothing. Memo. in Support of Final App., ECF No. 1617 at 19-21.[11] They also ignore that the only expert analysis on damages done showed the Formaldehyde Plaintiffs could argue for a 30% price reduction. ECF No. 1617 at 23.

In addition, these objections focus solely on the cash component of the settlement and ignore the voucher option. Ignoring the voucher option mistakenly ignores significant and valuable relief provided by the Settlement. Based upon the current participation and selection rates, Class Members selecting the voucher option will receive store credits that average $695. Weisbrot Decl. at ¶ 6. While, the costs for installation were never covered by the lawsuits

---

[11] Mr. Dotti objected that his reduced relief as part of the CARB1 group is unfair, citing to the significant amount of formaldehyde he found on his eight-year older flooring. ECF No. 1672. The date of his purchase – April 25, 2010 – predates Lumber Liquidators purchase of Sequoia Flooring, Inc., in September of 2011. Pls.' Mem. in Opp. to Summ. Judgment, ECF 1017 at ¶ 3. Sequoia was the company that contracted with the Chinese suppliers. Plaintiffs alleged that it was after Lumber purchased Sequoia that it learned that its Chinese suppliers were likely not selling CARB complaint laminate products. *Id*. This, along with the higher level of formaldehyde permitted by CARB1, factored into the decision to treat the CARB1 subclass differently from CARB2 purchases. McNamara Decl. at ¶ 8. In addition, Mr. Dotti's testing device is unknown, but does not equate to the deconstructive testing method approved by CARB. Memorandum Opinion on Defendants' Motion for Summary Judgment on Pl.'s First Amended Representative Class Action Complaint, ECF No. 1126 at 18-21.

Moreover, Lumber Liquidators has confirmed to Class Counsel the that vouchers may be used to defray costs of both for the removal of existing flooring and the installation of replacement flooring when done by Lumber Liquidators. McNamara Decl. at ¶ 3.

### 3.    The Claims Process and Notice Were Proper.

As an initial matter, this Court has already approved this exceptional notice program as the "best notice practicable under the circumstances as well as valid, due, and sufficient notice to all persons entitled thereto and complies fully with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution." ECF No. 1524 at 11-12. Courts uniformly grant final approval where, in addition to satisfying the other criteria, the notice program is completed in accordance with a program already held to be adequate as part of the preliminary approval process. *See, e.g.*, *Brunson v. Louisiana-Pacific Corp.*, 818 F.Supp.2d 922, 926 (D.S.C. 2011) (granting final approval where "Notice of the Settlement was given to the Class in accordance with the Preliminary Approval Order, including direct mail notice and publication."). The Notice Program comports with the Preliminary Approval Order. ECF No. 1618-2 at 2-3. The Notice Program has been exhaustive and constitutes the best practicable notice under the circumstances, resulting in a nearly 30% response rate, and 23.49% take rate.

Objectors Doss and Knispel complain that they did not receive an envelope or claim form with class notice. ECF Nos. 1648 & 1674. The Court's approved notice did not require an envelope: rather the notice contained a "business reply mail" tear-off that formed a return postage pre-paid postcard for claimants to send back with their claim number, relief selection, and signature. ECF No. 1339-2 at 23-24. There is no need for an envelope as the postcard *is* the claim form. It is simply not possible to have received the postcard and not the claim form. However, even if somehow a Class Member received an incomplete claim form, the postcard

notice provides that a claim may be submitted at the Settlement website.  There is no defect in the Claim Form.

### C. The Myriad of Objections as to Adequacy and Fairness Asserted by the Professional Objector Lack Merit.

#### 1. *The Court Should Consider the Intent of the Professional Objectors.*

Class Counsel recognize that objectors can provide genuine assistance to the parties, the Court, and the Class by identifying problems in a proposed settlement. However, that is not the goal of "serial" or "professional" objectors or their counsel:

> In recent years, however, it has become obvious that some objectors seek to pervert the process by filing frivolous objections and appeals, not for the purpose of improving the settlement for the class, but of extorting personal payments in exchange for voluntarily dismissing their appeals. These extortionate efforts, which the Seventh Circuit recently termed "objector blackmail," have increasingly interfered with the prompt and fair resolution of class litigation at a direct cost to class members, who may thereby be prevented from collecting the settlement funds owed to them for months and even years unless they succumb to the blackmail.

*In re Petrobras Sec. Litig.,* 14-cv-9662, (S.D.N.Y Sept. 19, 2018) at 2. McNamara Decl. Ex. B. These serial objectors essentially levy a tax on class action settlements, one that does not benefit anyone but the objectors and their counsel. Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1625 (2009). "[W]hen assessing the merits of an objection to a class settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042 AGF, 2013 WL 414476, at *1 (E.D. Mo. Feb. 1, 2013).

Courts have long recognized and lamented the mischief caused by the serial objector. *See, e.g., Devlin v. Scardelletti*, 536 U.S. 1, 22 n. 1 (2002) (noting "canned" objections filed by

professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.") (citation and quotations omitted); *In re UnitedHealth Grp. PSLRA Litig.,* 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009) ("The remoras are loose again"); *Snell v. Allianz Life Ins. Co. of N. Am.,* No. Civ. 97-2784 RLE, 2000 WL 1336640, at *9 (D. Minn. September 8, 2000) (referring to "professional objectors" as "a pariah to the functionality of class action lawsuits, as they maraud proposed settlements—not to assess their merits on some principled basis—but in order to extort the parties . . . into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process").

Moreover, sometimes serial objectors file "ghostwritten" objections: this is where the consumer submits the objection that a lawyer has drafted. *See, e.g.*, *Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 723287, at *3 (N.D. Ill. Feb. 6, 2018). The lawyer waits to make an appearance after the Court denies the objection and approves settlement, when the deadline to file the appeal arrives. *See id*. Indeed, part of the reason the Settlement required class members to identify if they had objected to a class action settlement in the last three years was to aid the Court in ferreting out these pernicious ghostwriting serial objectors.  ECF No. 1339-2 at Section 9(D).

Here, two of the objectors are either serial, professional, or otherwise vexatious objectors or are represented by sophisticated counsel who are themselves serial objectors. This Court should review these objections and objectors' counsel's motives with skepticism.

The attorney representing Diane Cantu-Guerrero, Robert Clore of the Bandas Law Firm, is a serial class action objector. Mr. Clore has recently filed objections in at least seven other high-profile cases across the country. *See, e.g.*, *Perkins v. LinkedIn Corp.*, No. 13-cv-04303 (N.D. Cal.); *Mehigan v. Ascena Retail Grp.*, No. 15-cv-00724 (E.D. Pa.); *Garber v.*

13

*Commissioner of Baseball*, No. 12-cv-03704 (S.D.N.Y.); *Chambers v. Whirlpool Corp.*, No. 11-cv-01733 (C.D. Cal.); *Rawa v. Monsanto*, No. 17-cv-01252 (E.D. Mo.); *Vergara v. Uber Tech.*, No. 15-cv-06942 (N.D. Ill.); *Birchmeier v. Caribbean Cruise Line*, No. 12-cv-04069 (N.D. Ill.). Mr. Bandas is likely the most prolific serial objector in the country and has been chastised by courts around the country for his conduct that benefits only him at the expense of claimants. "Mr. Bandas is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country . . . he is a professional objector who is improperly attempting to 'hijack' the settlement in this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified legal fees.'" McNamara Decl. at ¶ 17, Ex. C (Order Denying Obj., *Brown v. Wal-Mart Stores, Inc.*, Circuit Court of Rock Island Co., Illinois Oct. 29, 2009 at 1-2)*; see also In re Cathode Ray Tube Antitrust (CRT) Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (noting that Mr. Bandas has been repeatedly reprimanded for filing objections not to "effectuate changes to settlements, but … for his own personal financial gain; he has been excoriated by court for this conduct."); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, *1 (D. Nev. Mar. 8, 2010) (rejecting Bandas' objections as "not supported by law or the facts" and noting that he had "a document history of filing notices of appeal from order approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class."). Bandas has been sanctioned for his abuse of the objections process. *See, e.g., Dennings v. Clearwire Corp.*, No. 10-cv-01859, Dkt. No. 166 (W.D. Wash. Aug. 20, 2013) (revoking Mr. Bandas' authorization to practice in the Western District of Washington due to his abuse of objection process); *Embry v. ACER Am. Corp.,* 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) (striking Bandas' objection after failing to post appellate

bond and refusing to dismiss appeal); *In re Hyrdoxycut Mktg. & Sales Practices Litig.*, 2013 WL

5275618, at *5 (S.D. Cal. Sept. 17, 2013) (striking Bandas' objections and finding that they

"were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing

the objections.").

      Class Counsel does not expect Mr. Clore to appear at the hearing. Nor should Ms. Cantu-

Guerrero: Neither Clore nor anyone of the Bandas Law Firm appeared at her deposition.

McNamara Decl. at ¶ 11. Plus, the retainer agreement for Ms. Cantu-Guerrero informs she

should not expect Bandas to bother to argue the objection to this Court:

> Although we will craft the legal arguments used in your objection,
> and handle the logistics of filing the objection, Bandas Law Firm
> will not make an appearance in the district and our objection may
> be submitted without oral argument at the fairness hearing. You
> understand and agree that this might affect the chances that the
> district court will approve a settlement or fee request over your
> objection.

McNamara Decl. at Ex. D at 1-2. This admission to his clients that Bandas will not bother to

present the argument is consistent with what federal courts have observed about his practice.

Further, the retainer lets him take fees – perhaps far above what the objecting class member gets

– and resolve the claim independent of his client. *Id.* at p. 3. Bandas uses his witless client's

objection to line his own pockets:

> THE COURT: [your] strategy, which is: File an objection. If you can get
> money from the plaintiffs' lawyer, great. Then you go away. You get the
> money. Apparently your client doesn't because your client testified that he
> has never gotten any money.[12]
>
> THE COURT: I am not talking about being maligned. I am talking about a
> situation where your client has testified that although they objected many
> times and you've acknowledged that you got cash for withdrawing

_____

[12] McNamara Decl. at ¶ 19, Ex. F (*Garber v. Office of the Commissioner of Baseball*, No. 12-cv-03704 (S.D.N.Y. July 14, 2016) at 22:8-14.

> objections, your client testifies that he has never seen a penny of it. You
> say you don't know if it is true or not.[13]

Here, Ms. Cantu-Guerrero testified to lacking basic information about the settlement, the

litigation that led to it, her attorneys, the way they do business, and about her objection.

McNamara Decl. at ¶ 16. This reeks of a placeholder objection.

Less obvious is the objection by Jill Piazza, MDL No. 2743 ECF No. 149. Ms. Piazza

filed an objection that repeats much of an objection she filed in *Jabbari v. Wells Fargo*. *Compare*

*id.*, with McNamara Decl. ¶ 9 at Ex. E. She has filed objections before and has been regarded as

a serial objector. *See, e.g., Ebarle v. Lifelock, Inc.*, No. 3:15-cv-00258-HSG, 2016 WL 3610843

at *15 (N.D. Cal. May 13, 2016).

Ms. Piazza does not list an attorney and is not an attorney, but has been represented by

several class action objectors over the years, including Alan Sherwood, Stuart Yoes, John J.

Pentz, C. Benjamin Nutley, Edward F. Siegel, and Steve A. Miller.[14] Her objection here appears

to be ghostwritten by as-yet unidentified objecting attorney. Attempts to determine who wrote

the objection were ignored by Ms. Piazza before this filing. McNamara Decl. at ¶ 10.  If Ms.

Piazza in fact has counsel who did not sign the objection, it is both a violation of the Preliminary

Approval Order, ECF No. 1524 at 7 ¶ 15and Federal Rule of Civil Procedure 11. Specifically,

Rule 11 requires that "[e]very pleading, written motion, and other paper must be signed by at

least one attorney of record in the attorney's name" if a party is represented. Courts consistently

consider the fact that "serial objectors" who fail to file an appearance and ghost write objections

act in "bad faith and also potentially violat[e] . . . local and ethical rules." *See, e.g., Heekin v.*

---

[13] *Id.* at 61:9-13

[14] John J. Pentz has been referred to in this Circuit as "a professional and generally
unsuccessful objector" whose objections are "not well reasoned and . . . not helpful." *In re Royal
Ahold N.V. Sec. & ERISA Litig.*, 461 F.Supp.2d 383, 386 (D. Md. 2006).

*Anthem*, No. 05-cv-01908, 2013 WL 752637, at *3 (S.D. Ind. Feb. 27, 2013); *Chriswell v. Big Score Entertainment LLC*, No. 11-cv-00861, 2013 WL 315743, at *4 (N.D. Ill. Jan. 28, 2013) ("[T]he practice of 'ghost-writing' briefs for pro se litigants is unethical and will not be permitted . . . because such conduct circumvents the requirements of Federal Rule of Civil Procedure 11, which obligates members of the bar to sign all documents submitted to the court, and to personally represent that there are grounds to support the assertions made in each filing."). This is particularly problematic where the ghostwritten briefs are drafted by lawyers who are not licensed to practice in the relevant jurisdiction, which amounts to the unauthorized practice of law. *Gajewski v. Ocwen Loan Servicing LLC*, No. 14–cv–9230, 2015 WL 3961611, at *2 n. 1 (N.D. Ill. June 25, 2015) ("It is unlikely, to say the least, that these filings were composed by someone without an education in the law. If assistance was afforded by someone other than a licensed attorney, there would appear to be an issue of the unauthorized practice of law.").[15]

Ms. Piazza has indicated that she does not intend to show up for the final approval hearing – meaning her ghostwriter also will likely forgo an appearance and simply file an appeal. The Court should not credit either the Cantu-Guerrero or Piazza objections as they are the work of professional or serial objectors, and their ulterior motives are not to persuade the Court but to file a vexatious appeal.

    2.      *The Objections Asserted by the Serial Objectors Lack Merit.*

        a.      There is No Impropriety to Including a Quick Pay Provision.

---

[15] Bandas has itself been called out for improperly ghostwriting objections. *See, e.g.*, *Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 723287, at *3 (N.D. Ill. Feb. 6, 2018); *Markos et al. v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM (N.D. Ga. Jan. 16, 2017); *In re Hydroxycut Mktg. and Sales Prac. Litig.*, Nos. 09-md-2087 BTM (KSC), 09-cv-1088 BTM (KSC), 2014 WL 815394, at *4 (S.D. Cal. Mar. 3, 2014).

First, the Bandas Objection objects to the inclusion of a "quick pay" provision in the settlement as being unfair to Class Members and indicative of Class Counsel putting their interests ahead of the class. Bandas Obj. at 7.[16] Further, the inclusion of such a provision is raised as a basis to find Class Counsel inadequate and deny certification. *Id.* at 8. This is nonsense. The provision permits Class Counsel to receive payment within thirty-one days after entry of final approval, even if there is an appeal. ECF No. 1339-2 at Section 12(B). In the event of a successful appeal to the Fourth Circuit, Class Counsel could be ordered to repay some or all of the attorneys' fees. *Id.* Class Counsel, approved by this Court as adequate, could repay this money if needed. This does not harm the class nor cost it a single penny. Quick pay provisions are important to remove some of the leverage professional objectors like the Bandas Law Firm use against settling counsel, which is no doubt why he is objecting to it. Without a quick pay provision, serial objectors hope settlement counsel will pay them off to prevent a drawn out appeal which could delay the receipt of fees by settlement counsel for up to one year. Ironically, the Bandas Objection selectively cites to one paragraph of a lengthy article by Professor Brian Fitzpatrick regarding the propriety of using quick pay provision. Bandas Obj. at 7 n. 25, citing Fitzpatrick, 62 VAND. L. REV. 1623 at 1647. Omitted from the objection is Professor Fitzpatrick's repeated approval of quick pay provisions as a mechanism class action practitioners devised to stop the "blackmail attempts" of professional objectors. *Id*. at 1625–26 ("In my view, there is little doubt that the quick-pay provision is a better solution to the blackmail problem than those solutions proposed by courts and commentators."). The Bandas Objection concedes that no courts have rejected a quick pay provision as unfair or a reason to deny settlement. Bandas Obj. at 7. There is no reason to do so here.

---

[16] Ms. Cantu-Guerrero testified she did not know what a quick-pay provision was and was relying upon her counsel for this objection. McNamara Decl. at ¶ 16.

b.      The Vouchers Provide Meaningful Relief.

The Bandas Objection also speculates that the vouchers are likely to become worthless as

Lumber Liquidators may go bankrupt. Bandas Obj. at 1, 3-6.[17] This objection is illogical: it

essentially argues that because Lumber's finances are precarious, Class Counsel should have

obtained more cash and eschew providing the Class product inventory. That, of course, belies the

facts at hand. Lumber was in a difficult cash and cash-flow position but there were and are not

current indications of bankruptcy. This objection also ignores the work and competency of

Professor Eric Green and Judge Leonie Brinkema (neither of whom are cited in the objection)

who mediated the settlement negotiations and were keenly aware of Lumber Liquidators'

difficult cash position. The Bandas Objection provides no financial analysis of Lumber

Liquidators and merely extrapolates from assertions noting the litigation risks averred by Class

Counsel to presume that Lumber Liquidators will indeed cease to be a going concern. Both

objections ignore the other *Jiffy Lube* factors as to adequacy when poormouthing the $14 million

in vouchers obtained by Class Counsel. These objections presume that vouchers selected by

claimants over cash and averaging $695 would go unredeemed without any legal or factual

analysis. The Court should disregard them.

c.      The *Cy Pres* Provision for Residual Funds is Permissible.

The Bandas Objection erroneously claims that the Settlement includes an impermissible

---

[17] The objection also demands disclosure of any sealed documents as to Lumber's
financial situation. *Id*. at 4. There are none: the financial information regarding Lumber is public
information and included in Lumber's public filings with the SEC, and was cited in the
memorandum in support of Final Approval. ECF No. 1618 at 22-24.

*cy pres* provision. Bandas Obj. at 8.[18] The Settlement provides that Class Counsel may request permission from the Court to distribute residual amounts, such as uncashed checks, to charities supporting 2017 hurricane victims. ECF No. 1339-2 at 18. The Bandas Objection cites to this provision, but ignores the preceding paragraph that states, "In the event that the cash fund is not exhausted after all Approved Case Claims, attorneys' fees, costs, Service Awards, and administration costs have been paid, Approved Claimants will receive a proportional additional cash payment." *Id.* Thus, the Settlement anticipates a second distribution to the Class **first**, and then gives Class Counsel to request the Court a *cy pres* distribution of any *de minimus* remaining funds resulting from, for example (and as listed in the Settlement Agreement), uncashed checks. *Id.* at 18. Courts around the country have approved *cy pres* distributions where there are unclaimed funds. *See, e.g., In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519, 523 (D. Md. 2002) ("[T]he *cy pres* approach is most frequently used for the purpose of distributing the residue of a class settlement fund*.")*; *In re Lease Oil Antitrust Litig.*, MDL 1206, 2009 WL 5195977, at *8 (S.D. Tex. Dec. 22, 2009) (collecting cases). If Class Counsel or this Court found another distribution of residual amounts was feasible, then a *cy pres* <u>distribution </u>would not occur. *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007) (noting court's discretion to distribute funds to charitable organizations after all claimants were paid). The absence of the phrase "as a last resort" for *cy pres* does not make the Settlement's *cy pres* provision impermissible.[19]

        d.      There is No Impediment to a National Settlement Class.

---

[18] Ms. Guerrero testified that she did not know what cy pres was. McNamara Decl. at ¶ 16.

[19] If the Court desires, the final approval order can further delineate that the *cy pres* option may only be exercised as a last resort if the undistributed amounts could not be feasibly distributed to the claimants who have cashed checks.

Piazza's objection begins, "As was the case in the recently-decided *Espinosa v. Ahearn*, 2018 U.S. App. Lexis 1626 (9th Cir. Jan. 23, 2018), this diversity class action may not be certified because variations in state law defeat prominence." Piazza at 1. This parrots the beginning of Piazza's objection served in *Jabbari v. Wells Fargo*, No. 15-cv-2159, ECF No. 192 (N.D. Cal.). McNamara Decl. at Ex. E. However, the current objection was not updated to note that Ninth Circuit granted a motion to hear the *Espinosa* case (*In re Hyundai*) *en banc*, meaning that the three-judge decision that Piazza cites is no longer precedential. *See In re Anthem, Inc. Data Breach Litig.,* No. 15-md-02617-LHK, 2018 WL 3872788, at *7 (N.D. Cal. Aug. 15, 2018), *citing In re Hyundai & Kia Fuel Econ. Litig.,* 897 F.3d 1003, No. 15-56014, 2018 WL 3597310, at *1 (9th Cir. July 27, 2018). Piazza cites no Fourth Circuit law for this proposition, and no court in this circuit has found that a choice of law analysis is needed to certify a settlement class.

> e.   Since the Same Products, Purchasers, and Defendant are at Issue, There is No Impropriety in Simultaneously Settling the Durability and Formaldehyde Claims.

Piazza also complains that the Settlement combines two MDLs that should not have been settled together, despite the fact that both involved the same flooring purchased from the same Defendant. Piazza at 2. No citation is provided for this argument, which ignores that the JPML determined that the Durability MDL should be sent to this Court and that neither Judge Brinkema during mediation, nor this Court, saw any issue resolving the claims of both MDLs in one settlement.

**D.   The Objections to the Requested Attorneys' Fees Lack Merit.**

Contrary to the professional objections and those by the defense attorneys, the fees sought by Class Counsel are not excessive. Bandas Obj. at 9 & Piazza at 2-5. As detailed in the

Fee Motion, after three years of diligent and high-quality work on a complex case, Class Counsel achieved an excellent result for the Class on the eve of class certification, obtaining a significant settlement.[20] The Settlement combines two MDLs and compensates counsel in both actions. Class Counsel's request for 31% of the Settlement value is not "significantly above" what the Fourth Circuit has approved. Bandas Obj. at 12, *citing In re The Mills Corp. Sec. Litig.*, 265 F.R.d. 246, 264 (E.D. Va. 2009) (citing to range of fees based upon settlement fund of up to 30%). Furthermore, a lodestar cross-check demonstrates that Class Counsel alone would receive a negative multiplier of .897 if the Court granted the petition at 31% of the Settlement Fund. ECF No. 1645 at 22. This negative multiplier will continue to grow as Class Counsel deals with the serial objectors.

The attorney objectors (Johnston and Proctor) and the serial objectors (Bandas and Piazza or her ghostwriter) complain that the attorneys' fee request should only consider the $22 million in cash and ignore the $14 million in store credit. MDL 2743 ECF Nos. 140 (Bandas Obj.) at 10 &149, (Piazza at 3). Piazza even asserts that "valuation of claims-made settlements must be based upon actual usage of in-kind or discount relief." Piazza at 4. Of course, the cases Piazza cited involved reversionary settlements where a portion of the proceeds that went unclaimed would revert to the defendant. Such is not the case here, where with settlement is comprised of two non-reversionary funds.

Nor is this a coupon settlement. The Class Action Fairness Act of 2005 ("CAFA") requires courts reviewing "contingent Fees in Coupon Settlements" that "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a).

---

[20] Ms. Cantu-Guerrero testified she had not undertaken any examination, nor was aware of, the work done by Class Counsel in either litigation. McNamara Decl. at ¶ 13.

However, the Settlement here is not a coupon settlement as defined by CAFA, "since class members had the option to receive cash instead of value certificates[.]" *Williamson v. McAfee, Inc.*, 5:14-cv-00158-EJD, Dkt. No. 114, (N.D. Ca. Feb. 3, 2017) (approving settlement over objection of Bandas client where customers could select $11.50 in cash or receive $11.50 by default towards their renewal of virus protection service).[21] Because this is not a coupon settlement, the Court is not required to decipher a value for the store credit so as to determine the settlement value and attorneys' fees. *See, e.g., Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *11 (C.D. Cal. Oct. 11, 2016) (holding § 1712(c)'s apportionment provisions did not apply where monetary relief in addition to vouchers are provided.); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015) (rejecting application of CAFA heightened scrutiny where "the claimants in this case had the option of obtaining cash instead of a gift card, undercutting the argument that the settlement forces them to buy from the defendant."); *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 F. App'x 617, 619 (9th Cir. 2012) ("The settlement gives every class member the option to receive its share of the settlement in cash … This is not a 'coupon settlement' and therefore does not trigger the Class Action Fairness Act of 2005's limitations on contingent fee awards in connection with such settlements."); *Shames v. Hertz Corp.*, 2012 WL 5392159, at *21 (S.D. Cal. Nov. 5, 2012) (rejecting argument that settlement covered by CAFA rules where class members had a cash option); *Lee v. Enter. Leasing Co.*, 2015 WL 2345540, at *3 (D. Nev. May 15, 2015) (holding that where class member had option to recover a percentage of their charges in cash or more via voucher, the settlement was not a coupon settlement). Segregating the voucher portion of the settlement, or tethering attorneys' fees to redemption rates, is not required by CAFA.

---

[21] The order can be found at McNamara Decl. at Ex. G.

Bandas and Piazza both contend that the vouchers are not likely to be redeemed. MDL 2743 ECF Nos. 140 (Bandas Obj.) at 6 & 149 (Piazza) at 3. But they cite cases discussing *unsolicited vouchers*. *See, e.g.*, Piazza at 3, *citing Davis v. Cole Haan, Inc.*, 2015 U.S. Dist. Lexis 153434 (N.D. Cal. Nov. 12, 2015).[22] Here, the vouchers were self-selected by the claimants, can be transferred to family members, last up to three years, and carry values of hundreds of dollars. Weisbrot Decl. at ¶ 4. *Compare with Hooker v. Sirius XM Radio, Inc.*, No. 4:13-cv-003, 2017 WL 4484258, at *3 (E.D. Va. May 11, 2017) (refusing to give face-value for free radio service where it was an unclaimed benefit and the suit alleged that customers were duped into signing up for service after a free trial offer).

Piazza also cites to cases where attorneys' fees did not factor in the redemption rates of coupons. MDL 2743 ECF No. 149 at 3. However, Piazza cites to cases which were solely coupon settlements covered by CAFA's restrictions. *Id.*

The Bandas Objection also complains that the Court has only summary records to assess the lodestar of Class Counsel. MDL 2743 ECF No. 140 at 9. Counsel did not engage in duplicative billing and included many directives to attorneys working on this case to avoid billing for non-common benefit work. Nonetheless, Class Counsel provide here more detailed time information for each attorney involved in these two MDLs. McNamara Decl. at ¶ 21, Ex. H,

---

[22] Piazza and Bandas cite to *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1060 (C.D. Cal. 2010), which is also inapposite, as that proposed settlement did not create a fund. The same glaring distinction applies to other cases cited in Piazza's objection. *See, e.g.,* Piazza at 4, citing *Redman v. RadioShack Corp.,* 768 F.3d 622, 628 (7th Cir. 2014) ("The essential term was that each class member who responded positively to the notice of the proposed settlement would receive a $10 coupon that it could use at any RadioShack store."). Likewise, the *Rougvie* case does not resemble this one: "After notice, 3.3% of the Class chose either cash or a voucher. The remaining 96.7% of the Class, having not filed a claim, automatically receive a voucher. The parties concede consumers will redeem approximately less than three percent (3%) of these automatic vouchers." *Rougvie v. Ascena Retail Grp., Inc*., No. CV 15-724, 2016 WL 4111320, at *1 (E.D. Pa. July 29, 2016), cited by Bandas Obj. at 11 n. 40.

Ex. J. Robertson Decl. at Ex. A. Bryson Decl., attached here to as Ex. 4. Lopez Decl., attached

hereto as Ex.5. Ahdoot Decl., attached hereto as Ex.6. Should the Court find it helpful, further

detail can be provided.[23]

> ### E.     The Court Should Require a Sizeable Appeal Bond to Protect the Class From Unnecessary Appeals.

Rule 7 of the Federal Rules of Appellate Procedure vests the district court with the

discretion to order any appellant to post a bond "in any form and amount necessary to ensure

payment of costs on appeal." The purpose of Rule 7 is to protect an appellee against the risk of

non-payment by an unsuccessful appellant, as well as to protect the interests of the class. *See,*

*e.g.*, *In re Uponor, Inc.*, No. 11-md-2247 ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept.

11, 2012) ("Appeal bonds are often required on appeals of class action settlements or attorneys'

fee awards because the appeal effectively stays the entry of final judgment, the claims process,

and payment to all class members.") (citation omitted).

To deter professional objectors, federal courts routinely require objectors to post a bond

to cover the costs of losing the appeal and remove from the class the burden of litigating

frivolous appeals. *See, e.g.*, *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 7887788, at *3

(E.D. Pa. Dec. 3, 2015) ("Given our previous findings concerning the fairness of the settlement .

. . and the overwhelming support the settlement received, we conclude that permitting one lone

objector . . . to significantly delay receipt by the other Class members of their settlement benefits

– while causing the Class to incur substantial additional costs without some guarantee that those

costs, if taxed, will be recoverable – weighs heavily in favor of requiring a bond for the full

amount sought by the Class."). Courts in this Circuit consider three factors in deciding whether a

---

[23] Class Counsel can provide the Court individual time records *in camera* or redact them and file under seal to obscure attorney work product and privileged material.

bond should be imposed under Rule 7: (1) the appellant's financial ability to post the bond; (2) whether the appeal is frivolous; and (3) whether the appellant has engaged in vexatious or bad faith conduct." *Sky Cable, LLC v. Coley*, No. 5:11-cv-48, 2016 WL 8138819, at *2 (W.D. Va. December 5, 2012) (imposing an appeal bond of $75,000, including the anticipated attorneys' fees on appeal and recoverable costs).

Here, the two most likely appellants are (or appear to be) represented by counsel. Numerous courts have imposed an appeal bond when Bandas is the objector. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, at *1-2 (imposing a $500,000 bond where Bandas filed an objection); *Conroy v. 3M Corp.*, No. C00-2810, 2006 U.S. Dist. Lexis 96169 (S.D. Cal. Aug. 10, 2006) ($431,167 bond imposed); *Dennings*, 928 F.Supp.2d at 1272 ($41,150 bond); *Embry*, 2012 WL 3777163, at *2 ($70,650 bond); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-8285, Dkt No. 102 (N.D. Ill, Nov. 12, 2015) ($121,886 bond); *See also Gemelas v. Dannon Co., Inc.*, 1:08-cv-236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) (ordering $275,000 bond); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL-C-07018841 EMC, 2011 WL 3352460, *10 (N.D. Cal. Aug. 2, 2011) (ordering a $20,000 bond).

Given the demonstrated history of the Bandas Law Firm and other professional or serial objectors filing appeals for their own benefit and to the detriment of the class, as well as the bad faith conduct that would be apparent if Piazza is indeed represented by ghostwriting counsel, Class Counsel requests that the Court set a bond at a minimum of $50,000 to ensure that the costs of pursuing a losing appeal are borne by the objector's counsel and not the class.

## V.    CONCLUSION

For the reasons addressed above, Plaintiffs respectfully request that the Court overrule the objections filed in this case and (1) finally approve the Settlement as fair, reasonable, and

adequate; (2) approve the requested fees, costs, expenses, and services awards; and (3) impose an

appeal bond requirement should objectors file an appeal.

DATED: September 24, 2018                     Respectfully submitted,

*/s/ Steven J. Toll*                          */s/ Alexander Robertson, IV*
Steven J. Toll (VSB No. 15300)                Alexander Robertson, IV (*Pro Hac Vice*)
E-mail: stoll@cohenmilstein.com               Email: arobertson@arobertsonlaw.com
Douglas J. McNamara (*Pro Hac Vice*)          Mark Uyeno (*Pro Hac Vice*)
E-mail: dmcnamara@cohenmilstein.com           Email: muyeno@arobertsonlaw.com
Sally M. Handmaker (*Pro Hac Vice*)           Robertson & Associates, LLP
Cohen Milstein Sellers & Toll, PLLC           32121 Lindero Canyon Rd, Suite 200
1100 New York Ave NW, Suite 500               Westlake Village, CA  91361
Washington, DC 20005                          818.851.3850 (Telephone)
202.408.4600 (Telephone)                      818.851.3851 (Facsimile)
202.408.4699 (Facsimile)


*/s/ Steve W. Berman*                         */s/ Daniel K. Bryson*
Steve W. Berman (*Pro Hac Vice*)              Daniel K. Bryson (*Pro Hac Vice*)
E-mail: steve@hbsslaw.com                     E-mail: dan@wbmllp.com
Robert F. Lopez (Pro Hac Vice)                Patrick M. Wallace (*Pro Hac Vice*)
E-mail: robl@hbsslaw.com                      E-mail: pat@wbmllp.com
Hagens Berman Sobol Shapiro LLP               Whitfield Bryson & Mason LLP
1918 Eighth Avenue, Suite 3300                Raleigh, NC 27603
Seattle, WA  98101                            919.600.5000 (Telephone)
206.623.7292 (Telephone)                      919.600.5035 (Facsimile)
206.623.0594 (Facsimile)


*/s/ Niall McCarthy*                          */s/ Robert R. Ahdoot*
Niall McCarthy (*Pro Hac Vice*)               Robert R. Ahdoot (*Pro Hac Vice*)
Email: nmccarthy@cpmlegal.com                 E-mail: rahdoot@ahdootwolfson.com
Cotchett, Pitre & McCarthy, LLP               Theodore Maya (*Pro Hac Vice*)
840 Malcolm Road, Suite 200                   E-mail: tmaya@ahdootwolfson.com
Burlingame, CA 94010                          Bradley King (*Pro Hac Vice*)
650.697.6000 (Telephone)                      E-mail: bking@ahdootwolfson.com
650.697.0577 (Facsimile)                      Ahdoot & Wolfson, P.C.
                                              1016 Palm Ave.
 Alexander E. Barnett *(Pro Hac Vice)*        West Hollywood, CA 90069
 E-Mail: abarnett@cpmlegal.com                310.474.9111 (Telephone)
 Cotchett, Pitre & McCarthy, LLP              310.474.8585 (Facsimile)
 40 Worth Street, 10th Floor
 New York, NY 10013
 212.201-6820 (Telephone)
 917.398.7753 (Facsimile)

*Co-Lead Counsel for the*
*Formaldehyde Plaintiffs*

*Co-Lead Counsel for the*
*Durability Plaintiffs*



*/s/ David Hilton Wise*
David Hilton Wise, VA Bar#30828
WISE & DONAHUE, PLC
10476 Armstrong Street
Fairfax, VA 22030
Tel: 703-934-6377
Fax: 703-934-6379
dwise@wisedonahue.com

*Liaison Counsel for Durability MDL*




## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2018, a true and correct copy of the foregoing was

filed electronically with the Clerk of this Court using the CM/ECF system, and in accordance

with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A.  This

filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel

of record in this matter who have consented to electronic service.

*/s/ Steven J. Toll*
Steven J. Toll (VSB No. 15300)
E-mail: stoll@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
202.408.4600 (Telephone)
202.408.4699 (Facsimile)

*/s/ Alexander Robertson, IV*
Alexander Robertson, IV (*Pro Hac Vice*)
Email: arobertson@arobertsonlaw.com
Robertson & Associates, LLP
32121 Lindero Canyon Rd, Suite 200
Westlake Village, CA  91361
818.851.3850 (Telephone)
818.851.3851 (Facsimile)