FILED

2018 NOV -8 P 12: 36

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING DURABILITY MARKETING AND SALES PRACTICE LITIGATION

MDL No. 1:16MD2743 (AJT/TRJ)

This Document Relates to ALL Cases

---

# CLASS MEMBER DIANA CANTU-GUERRERO'S MEMORANDUM IN SUPPORT OF MOTION TO DENY APPEAL BOND

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1
   I.   Ms. Cantu-Guerrero's Appeal Is Meritorious. ................................................... 1
   II.  Ms. Cantu-Guerrero Has a Right to Appeal the Court's Decision. ................... 6
   III. Any Bond Should Be Limited to Costs on Appeal, Which Do Not Include Attorneys'
       Fees and Do Not Include Settlement Administration Costs. ............................. 8
CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Adams v. United Servs. Auto. Ass'n*, No. 2:14-CV-02013, 2016 WL 4129115 (W.D. Ark. Aug. 3, 2016) ........................................................................................................................... 4

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), *cert denied*, 525 U.S. 875 (1998) ..................... 6

*Asghari v. Volkswagen Group of Am., Inc.*, CV1302529MMMVBKX, 2015 WL 12732462 (C.D. Cal. May 29, 2015) ........................................................................................................ 5

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007) ............................... 6, 7, 9

*Boyd v. Coventry Health Care Inc.*, 299 F.R.D. (D. Md. 2014) ................................................ 4

*Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331 (4th Cir. 1998). ........................ 2

*Bund v. Safeguard Properties, LLC*, C16-0920JLR, 2017 WL 1613340 (W.D. Wash. Apr. 28, 2017) ........................................................................................................................................ 5

*Cooter & Gell*, 496 U.S. 384 (1990) ........................................................................................ 7

*Coppedge v. United States*, 369 U.S. 438 (1962) ..................................................................... 6

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) ........ 2

*Durham v. Jones*, No. WMN-10-CV-2534, 2013 WL 12242047 (D. Md. Feb. 6, 2013) .......... 7

*Fleury v. Rinchemont N. AM. Inc.*, No., No. C-05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ............................................................................................................................ 1

*Golloher v. Todd Christopher International, Inc.*, 2014 U.S. Dist. LEXIS 91942 (N.D. Cal. July 7, 2014) .................................................................................................................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) ......................................................... 4

*Hirschensohn v. Lawyers Title Ins. Corp.*, Civ. No. 96–7312,1997 WL 307777 (3d Cir. June 10, 1997) ........................................................................................................................................ 1

*In re American President Lines, Inc.*, 779 F.2d 714 (D.C. Cir. 1985) ............................. 6, 7, 11

*In re Diet Drugs Products Liability Litigation*, 2000 WL 1665134 (E.D.Pa. 2000). ............... 10

*In re Vasseli*, 5 F.3d 351 (9th Cir. 1993) ................................................................................... 7

*In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ....................... 6

*Khoday v. Symantec Corp.*, No. CV 111-180, 2016 WL 4098557 (D. Minn. July 28, 2016) ........ 7

*Manner v. Gucci Am., Inc.*, 2016 WL 6025850 (S.D. Cal. Oct. 13, 2016) .................................. 6

*Norman v. Hous. Auth. Of City of Montgommery*, 836 F.2d 1292 (11th Cir. 1999) ............. 4

*North Carolina v. Pearce*, 395 U.S. 711 (1969) .................................................................... 6

*Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012) .......................................... 7

*Sky Cable, LLC v. Coley*, No. 5:11CV48, 2016 WL 8138819 (W.D. Va. Dec. 5, 2016), *report and recommendation adopted*, No. 5:11CV00048, 2017 WL 437426 (W.D. Va. Jan. 31, 2017) ................................................................................................................................ 8

*Smith v. Floor & Décor Outlets of America*, No. 1:15-cv-04316 (N.D. Georgia, Ross, J.) ........... 3

*Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014) ..................................... 8, 11

*Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 295-99 (5th Cir. 2007) ............................ 7, 11

*Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005) .................................... 10

**Rules**

FED. R. APP. P. 7 .................................................................................................................. 1, 8

FED. R. APP. P. 39 ..................................................................................................................... 8

**Treatises**

*William B. Rubenstein*, NEWBERG ON CLASS ACTIONS § 15:47 (5th ed.) ............................ 5

INTRODUCTION

Objecting class member Diana Cantu-Guerrero submits this motion to deny class counsels' request for entry of an appeal bond. [Doc. 157 at 18]. In its order approving the settlement, this Court ordered "any objecting class member who appeals [the] Order to file simultaneously with their notice of appeal a motion stating their position as to what bond amount, if any, should be set." [*Id.*].

No bond should be set. Class counsels' ostensible basis for imposing an appeal bond is it will deter frivolous appeals. But, Ms. Cantu-Guerrero's appeal is meritorious. Even if it were frivolous, that would not be a valid basis for imposing an appeal bond.

If a bond is nevertheless set, it should be limited to "an amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7. The "'[c]osts' referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39." *Hirschensohn v. Lawyers Title Ins. Corp.*, Civ. No. 96-7312,1997 WL 307777, at *1 (3d Cir. June 10, 1997) (citation omitted). That would include items such as preparation of the record, filing fees, and similar costs. *See e.g., Fleury v. Rinchemont N. AM. Inc.*, No., No. C-05-4525 EMC, 2008 WL 4680033, at *8 (N.D. Cal. Oct. 21, 2008). Class counsels' proposed $50,000 bond, which they apparently take out of thin air, has no connection to costs under the rules and would be unlawful. Nevertheless, in the interests of judicial economy, Ms. Cantu-Guerrero does not dispute that if any bond is entered, $5,000 would be a reasonable amount.

I.   Ms. Cantu-Guerrero's Appeal Is Meritorious.

Although the validity of Ms. Cantu-Guerrero's appeal should be determined by the Fourth Circuit rather than this Court, Farmer's appeal is unquestionably meritorious. The toxic combination of providing most relief in the form of vouchers, which are distributed after any

1

appeal and depend on Lumber Liquidators' continued financial viability, while class counsel recover an immediate $11 million in cash is clear self-dealing by class counsel. The vouchers, which take up $14 million of the represented $36 million settlement, provide limited value because (1) they require class members to return to the same company that sold them shoddy, poisonous flooring, and (2) they may prove worthless given "Lumber Liquidators' precarious financial condition" and the "continual[] ... possibility that Lumber Liquidators could opt to seek protection from their claims in bankruptcy court." [Doc. 135 at 14]. The fact that the primary settlement benefit may prove worthless while class counsel are paid immediately in cash by a cash-poor defendant will be a focal point in Ms. Cantu-Guerrero's appeal in challenging the adequacy of counsel under Rule 23(a)(4), and the finding that the settlement is fair, adequate, and reasonable under Rule 23(e)(2).

Rule 23(a)(4), grounded in the Due Process Clause of the Constitution, conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." 23(g)(4) imparts an equivalent duty on class counsel, most weighty "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Together these provisions demand that the named representatives and class counsel manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).

The results of the claims process confirm Ms. Cantu-Guerrero's criticisms about the vouchers. The court's order approving the settlement noted "the high percentage of class members

who have selected the pro rata cash award." [Doc. 157, at 18]. In fact, there was "a *very* high rate of selection of the cash award."[1]

Consequently, class members who selected vouchers get around 59% of their purchase price, consistent with what they were told in the class notice (38%-104%). [*Id.* at 5]. But, class members who chose cash only get 5.5% of their purchase prices, many times less than what they were told in the class notice (20%-56% of the purchase price). [*Id.*].

Presumably, the numbers of class members who selected vouchers (which this Court should require class counsel to disclose) are nowhere close to the 36% who selected vouchers in *Smith v. Floor & Décor Outlets of America*, No. 1:15-cv-04316 (N.D. Georgia, Ross, J.), referenced by Alexander Robertson. [Doc. 153-3 at 2], where there was ostensibly no similar bankruptcy concerns.

Meanwhile, Lumber Liquidators' ability to honor the vouchers has only become more questionable.[2] The company's value continues to plummet. As of November 1, 2018, Lumber Liquidators stock was valued at $12.51 a share, down considerably from the $17.31 discussed in class counsels' motion for final approval of the settlement.[3] [Doc. 133 at 22]. That is indeed a precipitous fall from the "high of $114.19 in October of 2013." [Doc. 133 at 22].

If the vouchers are set aside, then this case settled for $9 million in cash plus $11 million in attorneys' fees (the former paid after resolution of any appeals and the latter paid 31 days after

---

[1] *See* settlement website, http://laminatesettlement.com./.

[2] Roger Gabel, Lumber Liquidators: '…In the Gutter, But Some of Us Are Looking at the Stars', Seeking Alpha (Sep. 17, 2018) (projecting continuing financial troubles for Lumber Liquidators, and noting that "'the optimist sees the donut; the pessimist sees the hole.' I see the latter because the hole is still pretty deep and could get deeper."), accessible at https://seekingalpha.com/article/4206584-lumber-liquidators-gutter-us-looking-stars.

[3] https://www.nasdaq.com/symbol/ll/historical.

approval). A settlement that awards class counsel more than the class is by definition and unfair settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.1998) (self-dealing "concerns warrant special attention when the record suggest that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement.").

Ms. Cantu-Guerrero challenged class counsel to identify a single case allowing a quick-pay provision for the attorneys and mostly vouchers for the class in the context of a potentially bankrupt defendant. They could not do so. *Cf. Adams v. United Servs. Auto. Ass'n*, No. 2:14-CV-02013, 2016 WL 4129115, at *1 (W.D. Ark. Aug. 3, 2016) (noting settlement, which included a quick pay provision, "benefit[ed] Plaintiffs' counsel and Defendants at the expense of the class"), *rev'd on other grounds*, 863 F.3d 1069 (8th Cir. 2017).

Further, though this Court has not yet entered an order on attorneys' fees, anything approaching the requested $11 million would be an abuse of discretion. As a threshold matter, class counsel have blindfolded this Court, at least under the lodestar method (which should be employed given the uncertain value of the vouchers), with an incomplete submission that prevents the Court from eliminating duplicative and unreasonable billing. Class counsel should have (but did not) produce "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman v. Hous. Auth. Of City of Montgommery*, 836 F.2d 1292, 1303 (11th Cir. 1999); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (refusing to accept a represented negative multiplier on cross-check where class counsel only submitted "the total hours spent by each attorney and other professional[s], with no specification of date or task"; court lacked any "backup detail" which made it "impossible to assess duplication of effort or unproductive time." Without this

information, the purported negative lodestar multiplier was "artificially low" based on "an inflated lodestar. . . ."); *William B. Rubenstein*, NEWBERG ON CLASS ACTIONS § 15:47 (5th ed.) ("while 'great detail' is not required, the records must 'identify the general subject matter of [the] time expenditures.' The time records . . . should demonstrate that the attorneys did not bill for hours that were unproductive, excessive or redundant"). "Although district courts are allowed ample discretion in awarding attorney's fees, fee awards must be based on adequate documentation. . . ." *Rubenstein*, at §15:47; *see also Bund v. Safeguard Properties, LLC*, C16-0920JLR, 2017 WL 1613340, at *2–3 (W.D. Wash. Apr. 28, 2017) (reducing hours based on inadequate description and redundancy, and noting that "courts should exclude from their calculation hours that lack adequate documentation, or which, though documented, were excessive, redundant, or otherwise unnecessary"); *Asghari v. Volkswagen Group of Am., Inc.*, CV1302529MMMVBKX, 2015 WL 12732462, at *50 (C.D. Cal. May 29, 2015) (reducing lodestar where there was duplicative billing and block billing, concluding that "the rates requested by class counsel are reasonable but that the total number of hours they expended is not"). Class counsels' broad categorization of labor, even as attached to their reply memorandum, prevents this Court from the required critical analysis of the extent to which the various firms engaged in overlapping, non-compensable work. *See e.g.*, Doc. 153-1, at Ex H[4] (reporting attorneys at Cotchett, Pitre & McCarthy, LLP spent 366 hours on the pleadings and 459 hours in depositions, without identifying either the pleadings or the depositions); Doc. 153-3 at Ex. A (reporting Robertson & Associates spent 181 hours on pleadings and 343 hours in depositions, without identifying the pleadings or depositions). Meanwhile, how much of the many hundreds of hours class counsel report in motion

---

[4] The last page of the billing chart appears on the last page of the exhibits to Douglas McNamara's declaration.

practice were dedicated to securing their own fees? "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *accord Manner v. Gucci Am., Inc.*, 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016). Any award under the lodestar method will be in error without far more detail.

Further, the proposed $11 million cannot be justified as a reasonable percentage of $36 million considering the questionable value of the $14 million in vouchers, as most recently demonstrated by the claims process. Of course, these and other arguments have not yet been addressed by this Court. But to the extent class counsel are allowed to reap $11 million with an immediate payday, these arguments are not just meritorious. They are likely to result in reversal and a better outcome for the class. Any appeal bond will only serve to discourage Ms. Cantu-Guerrero's valid appeal.

## II. Ms. Cantu-Guerrero Has a Right to Appeal the Court's Decision.

Of course, appeals are a matter of right. *In re American President Lines, Inc.*, 779 F.2d 714, 718 (D.C. Cir. 1985) (citing *Coppedge v. United States*, 369 U.S. 438, 441–442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." *Id.* (citing *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) ("[a] court is without right to . . . put a price on an appeal. A party's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (quoting *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998), *cert denied*, 525 U.S. 875 (1998)).

As a matter of due process, the merits of an appeal are decided by the appellate court and cannot be short-circuited by a district court that disapproves of the appeal. *American President*

*Lines*, 779 F.2d at 717; *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 299 (5th Cir. 2007); *see also Cooter & Gell*, 496 U.S. 384, 407 (1990).[5] Thus, "A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012).

The notion that an appeal bond under Rule 7 may be entered on the basis that the appeal is allegedly frivolous has been dispelled by courts in this Circuit and elsewhere. *See e.g., Durham v. Jones*, No. WMN-10-CV-2534, 2013 WL 12242047, at *1 (D. Md. Feb. 6, 2013); *Azizan v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 960 (9th Cir. 2007); *see also Khoday v. Symantec Corp.*, No. CV 111-180, 2016 WL 4098557, at *2 (D. Minn. July 28, 2016) ("[w]hether the objectors' "appeals are frivolous under Rule 38 . . . [was a] matter[] for the Eighth Circuit to decide and not factors for [the district court] to consider in calculating a Rule 7 appeal bond").

Courts should "not consider any alleged bad faith or vexatious conduct . . . because dong so would not advance the purpose of Rule 7, which is 'to protect the amount the appellee stands to have reimbursed, [and] not to impose an independent penalty on the appellant.' ... Fed. R. App. P. 38 which deals with frivolous appeals, is the appropriate avenue for penalizing bad faith or vexatious conduct by an appellant." *Durham*, 2013 WL 12242047, at *1. "Allowing districts court to impose high Rule 7 bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Azizian*, 499 F.3d at 961; *accord In re Am. President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985).

This Court should not entertain class counsel's efforts to restrict Farmer's appellate rights

---

[5] Further, the appellate court is the only court with the authority to impose sanctions for a frivolous appeal. *In re Vasseli*, 5 F.3d 351, 353 (9th Cir. 1993) (citing *American President Lines*, 779 F.2d at 717). Thus, if the Fourth Circuit determines that an appeal is frivolous, class plaintiffs have the option of taking action in that Court at that time.

7

through an untenable appeal bond premised on the false notion that Ms. Cantu-Guerrero's appeal is in any respect frivolous.

### III. Any Bond Should Be Limited to Costs on Appeal, Which Do Not Include Attorneys' Fees and Do Not Include Settlement Administration Costs.

Class counsels' reply agues for a $50,000 bond, an arbitrary number they selected to obstruct Ms. Cantu-Guerrero's due process rights to appeal. [Doc. 153, at 26]. It has no basis in law or fact. Rule 7 allows "costs on appeal." Fed. R. App. P. 7. Rule 39 defines costs on appeal to include items like preparation of the record and transcript. Fed. R. App. P. 39(e). There is no reason (and certainly no evidence) that would suggest such costs here would exceed more than a few thousand dollars.

Attorneys' fees, delay costs, and settlement administration expenses may not be included because there is no statute that would allow class counsel to recover them from an objecting class member. *Sky Cable, LLC v. Coley*, No. 5:11CV48, 2016 WL 8138819, at *3–5 (W.D. Va. Dec. 5, 2016), *report and recommendation adopted*, No. 5:11CV00048, 2017 WL 437426 (W.D. Va. Jan. 31, 2017) (allowing an appeal bond to include attorneys' fees because the underlying statute allowed for the plaintiff to recover them against the defendant).

Although there is little guiding authority in the Fourth Circuit, the weight of authority from other circuits confirms that administrative costs, delay costs/interest, and attorneys' fees are not properly included in an appeal bond in this context. In December, 2014, the Tenth Circuit resolved the issue of what costs are properly included in a Rule 7 bond and, in so doing, provided a comprehensive survey of the circuit courts of appeal that had already resolved that issue. *See Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014).

The court observed that: "[a]lthough Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to

maintain a class settlement pending appeal,⁶ we do not find the reasoning of those cases persuasive in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute." *Id.* at 1256. According to the survey conducted by the Tenth Circuit, the following circuit courts of appeal have already resolved this issue: First, Second, Third, Fifth, Sixth, Ninth, Eleventh and D.C. Now in *Tennille*, the Tenth Circuit has resolved this issue as well. *Id.* at 1254-55.

Even if there were statutory authority for reimbursement of administration costs, attorneys' fees, or interest/delay costs in this case (there is not), they cannot be included in a Rule 7 bond here because a Rule 7 bond can only secure costs that an appellee could actually recover from appellant if appellee were successful on appeal. *See e.g., Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959 (9th Cir. 2007). As one court explained: "More fundamentally, the question is not whether an item represents a 'cost' an appellee may incur during an appeal, but whether such 'cost' is one that a losing appellant will become responsible for paying to the appellee." *Golloher v. Todd Christopher International, Inc.*, 2014 U.S. Dist. LEXIS 91942, *5 (N.D. Cal. July 7, 2014) (citing *Azizian*, 499 F.3d at 959-60).

---

⁶ This Court cited *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012) in calling for briefing on the question of an appeal bond. In that case, the district court ordered a $170,000 bond consisting of $25,000 in appeals costs, $20,000 in settlement administration costs, and $125,000 for additional class notice. *Id.* at *4-6. Critically, the Eighth Circuit specifically stayed the bond to the extent it exceeded the $25,000 in appeal costs. *Uponor, F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1062 (8th Cir. 2013) (with respect to the objectors' argument that the bond was excessive, the Eighth Circuit "agreed and entered an order staying 'the requirement that Appellants post an appeal bond in excess of $25,000 [the amount of appeal costs]"). While the Eighth Circuit did not include its reasoning, its decision to permit only the $25,000 appeal costs suggests that the inclusion of the settlement administration and class notice costs was improper. The appellees did not pursue the issue further, and the Eighth Circuit never reached the issue of the appropriate size of the appeal bond. *Id.* at 1062 n.3. In the end, although the *Uponor* appellees prevailed, they were awarded no costs for settlement administration and notice. *See In re Uponor*, No. 11-2247, Dkt. 157 (Order Granting Motion to Withdraw/Disburse/Release Funds) (D. Minn. Oct. 21, 2013).

Thus, the Ninth Circuit held in *Azizian* that although Rule 7 could theoretically include attorneys' fees based on the applicable fee-shifting statute, such fees could not be used in the Rule 7 bond in that case because they were not recoverable against the appellant class member. 499 F.3d at 959-60. The applicable fee-shifting statute only authorized fees to be recovered from the losing defendant, and not an objecting class member. *Id.*; *see also Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005) (reversing Rule 7 bond that included attorneys' fees because the fee-shifting statute only permitted recovery of fees to defendants in exceptional cases, and the district court made no finding that defendant-appellee would actually recover fees).

Here, class counsel cannot identify any statute that would permit attorneys' fees to be awarded against the objecting class members. As such, these statutes provide no basis for including attorneys' fees in the appeal bond.

Nor is the $50,000 justified as delay costs in a Rule 7 appeal bond. While a Rule 8 supersedeas bond can secure delay costs, a Rule 7 appeal bond cannot. *See e.g., Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007).

As explained in *Tennille*:

> A Rule 7 appeal bond is similar to, but distinguishable from, a supersedeas bond, which a court can require to preserve a money judgment when staying execution of that judgment pending appeal, FED. R. CIV. P. 62(d); FED. R. APP. P. 8(a)(2)(E). *See* 16A Wright, et al., *Federal Practice & Procedure* § 3953 (noting a Rule 7 appeal bond "should not be confused with a supersedeas bond"). "[A] 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a [Rule 7 appeal or] 'cost bond' is prospective relating to the potential expenses of litigating an appeal." *Adsani*, 139 F.3d at 70 n. 2 (2d Cir.). And, whereas a Rule 7 appeal bond is restricted to costs on appeal, *see* FED. R. APP. P. 7, a supersedeas bond usually covers the full amount of the money judgment, "together with costs, interest, and damages for delay," 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2905 (3d ed. Apr.2013).

*Tennille*, 774 F.3d at 1254.

A supersedeas bond is not available here because appellants have not sought to stay the judgment. *See e.g., Vaughn*, 779 F.2d at 716-18. It has been held to be reversible error to impose a supersedeas bond under Rule 8 ostensibly under the authority of a Rule 7 cost bond. *See e.g., id*; *In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985).

There is simply no valid basis (or evidence) for the requested $50,000 appeal bond. Nevertheless, in the interest of judicial economy, to the extent this Court orders the posting of a bond, Ms. Cantu-Guerrero submits that $5,000 is not an inappropriate amount. *See Keller*, 2015 WL 6178829, at *2.

## Conclusion

Objecting class member Diana Cantu-Guerrero should be allowed to pursue her meritorious appeal to a settlement that provides the lion's share of relief in vouchers that are potentially worthless given Lumber Liquidator's financial distress, while awarding class counsel an immediate cash windfall. Although no bond is warranted, as a matter of judicial economy, she does not contest that $5,000 would be a reasonable amount for a bond if allowed.

DATED: November 8, 2018      Respectfully submitted,

Robert W. Clore
Pro Hac Vice
Texas State Bar #24012436
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, TX 78401
(361) 698-5200

*Counsel for Objecting Class Member Diana Cantu-Guerrero*

## Certificate of Service

In addition to filing this objection with the Clerk's Office at 401 Courthouse Square, Alexandria, VA 22314, the undersigned certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Motion and associated exhibits upon the following.

DATED: November 8, 2018

**Defendant Lumber Liquidators, Inc.**
**Lead Counsel:**
Diane P. Flannery, Esq.
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

**Formaldehyde**
**Plaintiffs' Co-Lead Counsel:**
Steven Toll, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave, NW
Suite 500 – West Tower
Washington, DC 20005

**Durability**
**Plaintiffs' Co-Lead Counsel:**
Alexander Robertson, IV, Esq.
Robertson & Associates, LLP
32121 Lindero Canyon Rd, Suite 200
Westlake Village, CA 91361

_____
Robert W. Clore